UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-61490-CIV-COOKE/BANDSTRA

PANDORA JEWELERS 1995, INC.,

    *Plaintiff*,

v.

PANDORA JEWELRY, LLC ,

    *Defendant.*

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

THIS MATTER is before me on Plaintiff's Motion for Preliminary Injunction [D.E. 12]. The Parties have fully briefed this Motion, and I have reviewed the arguments, the record, and the relevant legal authority. For the reasons explained below, Plaintiff's Motion for Preliminary Injunction is denied.

### I. BACKGROUND

Plaintiff is a full-service jeweler who owns a single store in Deerfield Beach. Defendant is a multinational jewelry designer and manufacturer that originally sold its products wholesale to independent jewelry stores but recently began opening retail stores in South Florida.

**A. The Plaintiff, Pandora Jewelers 1995, Inc.**

Plaintiff has operated its store under the PANDORA mark since 1976, though it never registered the mark. Plaintiff provides full retail jewelry services including the appraisal, repair, cleaning, and consignment of jewelry. Plaintiff sells fine jewelry of various brands as well as designer handbags. Though Plaintiff does not own or market a brand of jewelry under the mark

PANDORA, its offers custom design pieces upon request. In addition to its physical location, Plaintiff maintains a website, "pandorajewelers.com" through which it has both advertised its retail jewelry services and sold jewelry since 1999. Plaintiff displays the PANDORA mark on its store, website, and product packaging, and advertises in local newspapers, magazines, and movie theaters; on television, radio, billboards and bench ads; and through direct mail, e-mailers and postcards. Using its $150,000 annual advertising budget, Plaintiff promotes its mark in four local newspapers distributed in Miami-Dade, Broward, and Palm Beach counties with a circulation of approximately 1.4 million. Plaintiff generates approximately $2.5 million annually for the sale of its goods and services, both in its store and on its website. Over the course of thirty years, Plaintiff developed a reputation in its community for retail jewelry services and the Sun Sentinel, a newspaper with 500,000 copies distributed in Broward county, voted Plaintiff the Best Jewelry Store in North Broward in 2002.

**B.  The Defendant, Pandora Jewelry, LLC**

Defendant, a subsidiary of a Danish holding company, manufactures and distributes its own brand of jewelry under the PANDORA mark to retailers around the world. Defendant owns several product lines under the PANDORA brand, its most famous being a unique charm jewelry line that allows the customer to design their own jewelry by selecting among many handcrafted charms or beads that clip onto PANDORA brand bracelets and necklaces. Defendant owns the patent for this particular charm jewelry system. Additionally, Defendant owns several multi-piece jewelry collections. Defendant's wholesale sales have increased from approximately $2.765 million in 2003 to over $155 million in 2008, nationwide. Defendant first entered the United States market in 2003, selling PANDORA brand jewelry to retail jewelry stores at

wholesale prices. With its debut, came an aggressive national advertising campaign the budget for which has increased from $2.3 million in 2005 to $33.2 million in 2009.

**C.  Defendant's Business Model**

At the time of this Motion, Defendant sold its products to approximately 2,500 independent retailers in the United States, Canada, Central America, South America and the Caribbean. One hundred fifty-seven of those retailers are located in Florida and twenty-five currently operate in Palm Beach, Broward and Miami-Dade counties. Each independent authorized retailer carrying Defendant's products does so pursuant to Defendant's Terms and Conditions. Authorized retailers advertise and sell Defendant's products in their store using Defendant's signage and display cases. Additionally, Defendant offers authorized retailers monetary contributions to assist them in placing local ads for Defendant's products (a common billboard ad might read "PANDORA Bracelets" prominently and "available at *XYZ* authorized retailer" smaller and less conspicuously).

In 2008, after several years of operating a purely wholesale business, Defendant introduced stand-alone retail stores, which Defendant terms "concept stores," that sell only Defendant's jewelry products and emphasize Defendant's brand exclusively.[1] Concept stores are operated by third-party licensees. At the time this Motion was filed, Defendant had licensed thirty-five concept stores in the United States, three of which were open in Florida, and had planned to open additional South Florida stores in Palm Beach, Boca Raton, Aventura, and Miami. It is the South Florida locations which are the subject of contention.

---

[1] Additionally, Defendant has opened a number of "stop-in-shop" locations – spaces within multibrand or department stores dedicated to Defendant's jewelry products.

**D.  Prior Business Dealings Between Plaintiff and Defendant**

In November 2004 Plaintiff became an authorized retailer for Defendant's products. Plaintiff purchased Defendant's jewelry at wholesale prices, sold Defendant's jewelry at marked-up retail prices, and advertised Defendant's jewelry prominently in its store and on its website. Plaintiff and Defendant maintained this relationship for four and a half years.

In May 2009, upon learning of Defendant's plans to open retail jewelry stores in South Florida under the PANDORA mark and after witnessing increased customer confusion as to the source of its goods, Plaintiff terminated its business relationship with Defendant.  In September 2009 Plaintiff brought this action against Defendant for unfair competition, trademark infringement, and tortious interference with an advantageous business relationship.  One month later, Plaintiff filed this Motion for Preliminary Injunction [D.E. 12] to enjoin Defendant from opening and operating retail jewelry stores under the name PANDORA in Miami-Dade, Broward and Palm Beach counties.

## II. LEGAL STANDARD

To issue a preliminary injunction enjoining the Defendant from opening and operating retail jewelry stores under the name PANDORA, the Plaintiff, as movant, must establish (1) it has a substantial likelihood of success on the merits of its claim, (2) it will suffer irreparable injury unless the injunction is issued, (3) the threatened injury to it outweighs the possible injury that the injunction may cause the Defendant, and (4) if issued, the injunction would not disserve the public interest.  *N. Am. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008) (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002)).  A preliminary injunction is an extraordinary and drastic remedy not to be

granted unless the movant clearly carries the burden of persuasion as to all four elements. *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).[2]

### III. ANALYSIS

**A. Likelihood of Success on the Merits**

To prevail on a trademark infringement claim under the Lanham Act, a plaintiff must prove (1) that it has acquired enforceable trademark rights in the mark, and (2) that the defendant's use of the mark is likely to cause confusion among consumers.[3] 15 U.S.C. §1125 (2006); *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007). Even if both elements are met, a plaintiff's claim may be defeated by the affirmative defenses of acquiescence, estoppel[4] or laches. 15 U.S.C. §1115 (2006); *Freedom Sav. & Loan Ass'n v. Way*, 583 F. Supp. 544, 552 (M.D. Fla. 1984).

Here, Defendant challenges the exclusivity of Plaintiff's trademark rights and argues that its affirmative defenses "overshadow [any inquiry into] likelihood of confusion" [D.E. 13]. I will not engage in the seven-factor likelihood of confusion analysis here because it is not specifically

---

[2] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[3] As Plaintiff's common law and federal trademark infringement claims are similar, I will only analyze the federal claim in this order. *Investacorp, Inc. v. Arabian Inv. Banking Corp. E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991) (using federal infringement claim analysis as a measuring stick for Florida common law infringement claims); *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984) (declining to separately address state common law infringement claim because of its similarity to the federal infringement claim).

[4] Though Defendant lists estoppel as an affirmative defense to Plaintiff's Complaint [D.E. 1], it does not raise that defense in response to Plaintiff's Motion for Preliminary Injunction [D.E. 12].

challenged by the Defendant and it is not dispositive in this case.[5] I will first address whether Plaintiff has established enforceable trademark rights in the PANDORA mark for retail jewelry services and then determine whether Defendant's affirmative defenses are likely to defeat Plaintiff's claim.

### 1. Enforceable Rights

To demonstrate that it has enforceable rights in a trademark, a plaintiff need not have registered its mark under the federal Lanham Act. 15 U.S.C. § 1125 (2006). Common law trademark rights can be acquired, but only within those markets where the mark has been used and its meaning become known. *Cotton Ginny, Ltd. v. Cotton Gin, Inc.*, 691 F. Supp. 1347, 1352 (S.D. Fla. 1988) (citing *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 415 (1916)). Specifically, a plaintiff must show that (1) it is the prior user of the unregistered mark in the area and (2) it acquired a protectable interest in the mark because the mark is either inherently distinctive or has acquired a secondary meaning. *Investacorp, Inc.*, 931 F.2d at 1522.

Here, Plaintiff has acquired common law trademark rights to the PANDORA mark since it is the prior user and the mark is inherently distinctive. First, there is no question that Plaintiff's use of PANDORA in connection with its retail jewelry services predates both Defendant's registration and admitted use of the mark in the United States. Plaintiff has continuously operated a full-service jewelry store under the PANDORA mark since 1976 while Defendant's first use of the mark in the United States was in 2003. Plaintiff submits, as evidence of its prior and continuous use, advertisements in magazines and local newspapers, and customer

---

[5] Without delving into detail, it appears self-evident that Defendant's mark, "Pandora Jewelry" to identify jewelry (whether sold in its own store or distributed wholesale to independent retailers) is likely to be confused or improperly affiliated with Plaintiff's mark, "Pandora Jewelers," which identifies jewelry services.

declarations.[6] I find this evidence to be persuasive in establishing Plaintiff's prior use.

Second, the PANDORA mark is inherently distinctive. Distinctiveness measures the relationship of the mark to the good or service it describes. *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). The stronger the relationship, the less distinctive the mark, e.g. the mark "Computers USA" to describe a company selling computers in the United States, is not distinctive because it bears a strong relationship to the goods or services it identifies. The categories from most to least distinctive are: (1) arbitrary; (2) suggestive; (3) descriptive; (4) generic. *Id*. Arbitrary marks bear no relationship to the products they describe. *Id*. As the word "Pandora" bears no relationship to the sale of jewelry, the PANDORA mark is inherently distinctive. Hence, Plaintiff adequately established that as the prior user of a distinctive mark, it has enforceable common law trademark rights to the PANDORA mark. Nevertheless, Defendant argues that even as a subsequent user, because it, not the Plaintiff, is the federally registered user, it is entitled to a presumption of exclusive rights.

It is true that a federally registered user of a mark is entitled to exclusive nationwide protection of the mark. 15 U.S.C. § 1125 (2006); *see also* Fla. Stat. § 495.161 (2007) (granting exclusive statewide rights to state registrants). Those rights, however, do not extend to a territory in which a prior user has acquired common law rights, as the Plaintiff has here. *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1990). Consequently, a subsequent

---

[6] Defendant contends that I should disqualify this evidence because it is defective under the factors for accurate survey evidence, *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 533 F. Supp. 75, 79 (S.D. Fla. 1981), and further asserts that the evidence does not successfully establish the secondary meaning of the PANDORA mark. First, it is not necessary for Plaintiff to establish secondary meaning as the PANDORA mark is arbitrary in relation to the retail jewelry services. Second, I will consider the surveys for the purpose articulated by Plaintiff in its Reply Brief [D.E. 18], as evidence of Plaintiff's actual and continuous use of the PANDORA mark.

registered user can feasibly coexist with a prior user who has acquired common law rights so long as both operate in separate territories and the subsequent user does not encroach upon the prior user's initial territorial scope or geographic zone of natural expansion. *Tally-Ho, Inc.*, 889 F.2d at 1023. Users of the same trademark to denote similar products or services can even coexist in the *same* geographic zone so long there is no competitive overlap in the actual *uses*. *Id*.

Defendant argues that Plaintiff cannot claim exclusivity in any region as it has failed to adequately define the territorial scope of its trademark rights, and further, that Plaintiff relinquished any exclusive rights to the mark it might have had when it became aware of and agreed to sell Defendant's products, not merely in its territory, but in its very store. A delineation of Plaintiff's territorial scope of protection is not warranted here because Plaintiff does not challenge Defendant's historical presence in its physical territory.

Plaintiff instead argues that Defendant's most recent use of the mark to open retail jewelry stores is an invalid infringement of Plaintiff's protected use. Specifically, Plaintiff contends it did not relinquish its rights by selling Defendant's products in its store because at that point Defendant was operating merely as a wholesaler. Plaintiff argues that it is Defendant's operation of retail jewelry stores, distinct from its wholesale use, that marks a competitive overlap and infringing expansion into Plaintiff's protected zone of rights. I do not agree with Plaintiff that Defendant's use of the mark to open retail jewelry stores is distinct from Defendant's use of the mark as a wholesaler, such that the former marks a new infringing expansion into Plaintiff's territory. As resolution of this question has a direct bearing on the validity of Defendant's affirmative defenses, I will discuss this conclusion in detail below.

### 2. Defenses

Defendant argues the affirmative defenses of acquiescence, waiver[7] and laches. These defenses all require Plaintiff's undue delay in bringing an action for trademark infringement. *SunAmerica Corp.*, 77 F.3d at 1344.  Plaintiff argues since it filed its Complaint only a few months after Defendant's first infringing use in 2009, there was no undue delay in bringing this action.  A central premise of Plaintiff's theory is that Defendant's current use (sale of PANDORA brand jewelry in its own retail stores) is different from Defendant's previous use (sale of PANDORA brand jewelry to independent retail stores).  Plaintiff explains that it had no objection to Defendant's previous use of the PANDORA mark in South Florida which began, at the latest, in 2004.  This argument might have had some credence had Defendant previously been an invisible wholesaler using Plaintiff's mark, whose subsequent debut into the consumer jewelry market as a retailer entailed the offering of services identical to those offered by Plaintiff.  Those are not the circumstances here.

Since 2003, Defendant maintained widespread visibility in the consumer jewelry market even as a wholesaler.  It promoted itself aggressively so that consumers would associate its jewelry products, not with any particular authorized retailer, but with the PANDORA brand.  For instance, Defendant's advertising program with authorized retailers allowed retailers to run billboard ads for their store with significant monetary contribution from Defendant; however, such ads featured Defendant's products and name prominently while the name of the retailer was displayed less noticeably.

---

[7] Since, the waiver defense has no root in trademark law, I will not address that defense in this order.  *SunAmerica Corp. v. Sun Life Ins. Co. of Canada*, 77 F.3d 1325, 1344 (11th Cir. 1996).

Previously, when Defendant had no retail store of its own, the consequences of the ads were that consumers seeking to purchase Defendant's products would either go to the retailer advertised less conspicuously on the billboard, or look up Defendant's brand and find Plaintiff's store. Under this scenario, Plaintiff benefitted from billboard ads that did not feature its store. Now that Defendant has its own storefront, an additional consequence of the same ad is that consumers seeking Defendant's products will look up Defendant's brand and find Defendant's store. In this second scenario, Plaintiff's store does not figure as greatly. Plaintiff is, in fact, lamenting the current lack of the confusion from which it had previously benefitted.

Further, Defendant's debut as a retailer did not entail the offering of jewelry retail services such as those offered by the Plaintiff, i.e. cleaning, repair and consignment. Defendant continues to exclusively sell its own jewelry products. Its only additional public offering as a retailer is a storefront. Accordingly, I find that there is no significant distinction between Defendant's use of the PANDORA mark as a wholesaler and Defendant's use of the PANDORA mark as a retailer. Therefore, Defendant's potentially infringing use of the PANDORA mark must be dated from 2004, the time of its first use as a wholesaler in South Florida. Upon this basis, I will now consider the defenses of acquiescence and laches.

### a. Acquiescence

Acquiescence is an equitable defense that denotes active consent by a senior user to another's use of the mark. *Coach House Rest. v. Coach and Six Rests., Inc.*, 934 F.2d 1551 (11th Cir.1991). Acquiescence requires proof of three elements: (1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the

Defendant undue prejudice. *SunAmerica Corp.*, 77 F.3d at 1333. The absence of one element of the acquiescence defense is sufficient to deny the equitable relief requested by the Defendant. *Coach House Rest.*, 934 F.2d 1551 (11th Cir.1991).

It is unclear on the arguments presented by the parties whether Plaintiff actively represented that it would not assert a right or a claim. Defendant offers evidence of the agreements Plaintiff signed before becoming an authorized retailer; however, those agreements at best, indicate Plaintiff's acknowledgment of Defendant's mark. The pleadings do not reflect any clause in Defendant's Terms and Conditions or other similar documents that denote Plaintiff's active representation that it would not assert a claim for trademark infringement. Since Plaintiff defeats the first prong, the equitable defense of acquiescence will likely fail.

### b.  Laches

Under the defense of laches, Defendant must show (1) a delay in Plaintiff's assertion of a right or claim; (2) that the delay was not excusable; (3) and that the delay caused undue prejudice. *Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540 (11th Cir. 1984). Application of this doctrine is flexible and entails an examination of the amount of delay and the prejudice caused by the delay. *Id*.

Though the record is silent on this point, the latest date Plaintiff could possibly have learned of Defendant's use of the mark was in early 2004, when Plaintiff was first approached by Defendant with the opportunity to become an authorized retailer. Plaintiff initiated this action against Defendant in September 2009. Plaintiff, again relying on the flawed premise that Defendant's use of the mark as a wholesaler is fundamentally distinct from its use of the mark as retailer, argues that there was no delay in asserting a claim against Defendant. Since I do not

accept Plaintiff's underlying theory, I find that there was, at least, a five and half year delay between Plaintiff's awareness of Defendant's confusing use of the PANDORA mark and Plaintiff's assertion of its trademark infringement claim.

Whether the delay was excusable requires an examination into the reasons for the delay. *SunAmerica Corp.*, 77 F.3d at 1345. The reason advanced by the Plaintiff, is that it had no reason to assert a challenge to Defendant's use of the mark until it changed its business to jewelry retail services. As analyzed above, though Defendant's subsequent use of the mark is facially different from its first, the confusing effect on the public has always been the same. Moreover, Plaintiff should have been aware of the confusion from its unique position as prior user *and* authorized retailer of the subsequent user's products.

The undue prejudice caused to the Defendant by Plaintiff's five and a half year delay is indisputable. Defendant argues that it has spent approximately $61.6 million in advertising expenditures alone between 2005 and 2009. Though the pleadings do not contain the portion of that budget allocated specifically to the South Florida region, I find that Defendant has expended significant time and effort promoting its brand in the area, not only advertizing but also through its establishment of several concept stores and preparations to open several more.

As the Defendant has shown the existence of all three elements, I find the equitable defense of laches will likely be meritorious, thus impeding Plaintiff's ability to prove a likelihood of success on the merits. Even if the laches defense ultimately fails, Plaintiff's Motion [D.E. 12] is still defeated on other grounds, as explained in sections B and C, below.

## B. Irreparable Injury

Even if Plaintiff had established a likelihood of success on the merits, absence of a

likelihood of irreparable injury, standing alone, would make a preliminary injunction improper. *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (affirming the district court's denial of preliminary injunctive relief based on plaintiff's failure to show substantial likelihood of irreparable injury). Plaintiff argues that it is entitled to a presumption of irreparable injury because of its showing of likelihood of success on the merits of its trademark infringement claim. Though *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) does not categorically foreclose the possibility of a presumption upon a showing of likelihood of success on the merits, *North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228 (11th Cir. 2008), Plaintiff has failed to demonstrate a likelihood of success on the merits. I find there is no presumption of irreparable injury and further, that Plaintiff has not demonstrated a likelihood of irreparable injury.

Plaintiff contends that loss of the right to exclude others from using its protected trademark is, in and of itself, sufficient evidence of irreparable injury. Plaintiff argues that under Defendant's previous use it did not suffer injury but that now, when Defendant's opening of retail stores is imminent, Plaintiff is likely to suffer irreparable injury. It does not appear that Plaintiff is suffering because of Defendant's latter use any more than it did during Defendant's previous use. I find that Plaintiff has failed to show a likelihood of irreparable injury in the absence of a preliminary injunction.

## C. Balance of Hardships

The relevant inquiry is whether the threatened injury to the Plaintiff if a preliminary injunction is denied outweighs any potential harm to the defendant if the preliminary injunction is granted. *N. Am. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008). I find

the balance of hardships tips in favor of the Defendant.

Plaintiff argues that its loss of control of the mark for jewelry retail service is immeasurable and irreparable, while Defendant's hardship would be a mere loss of expected profits that could potentially be avoided by opening retail stores under a different name. Plaintiff cites *GMC v. Phat Cat Carts, Inc.*, 504 F. Supp. 2d 1278, 1287 (M.D. Fla. 2006) as authority for the assertion that loss of goodwill outweighs loss of revenue.

Conversely, Defendant argues that Plaintiff would suffer no hardship, but that Defendant would suffer significant financial loss, and damage to its reputation and goodwill. Defendant estimates that if a preliminary injunction were granted, it would lose between $500,000 and $750,000 from each licensee who pays that amount to operate a concept store, between $85,000 and $125,000 per year from each licensee who contributes to rent of store space, and $45,000 per month in lost sales (estimated in wholesale prices). Further, Defendant argues that a sudden injunction and subsequent revocation of licenses from concept store licensees would result in significant damage to its reputation and loss of goodwill.

I find Defendant's argument persuasive. The harm Plaintiff will suffer if Defendant is allowed to continue operating its Concept Stores in South Florida is no different from the harm Plaintiff suffered being one of many independent retailers in close proximity that carried Defendant's products – the harm of competition, to which Plaintiff previously did not object. It is Defendant, not the Plaintiff, who will suffer damage to reputation and loss of goodwill if the preliminary injunction were granted.

Accordingly, I find the harm Defendant would suffer if a preliminary injunction were granted to significantly outweigh potential harm to the Plaintiff if a preliminary injunction were

denied.

**D. Public Interest**

The public interest is served by eliminating confusion in the marketplace. *SunAmerica Corp.*, 77 F.3d at 1334. Denial of Plaintiff's motion would not be adverse to the public interest both because the services and products offered by the parties are sufficiently dissimilar, and because Defendant's opening of concept stores actually serves to dispel some confusion as to the source of PANDORA brand jewelry products. Additionally, Defendant has so pervasively penetrated that market, that its sudden removal would disserve the public interest.

### IV. CONCLUSION

Plaintiff's Motion for Preliminary Injunction fails because Defendant's affirmative defense of laches will likely be meritorious, Plaintiff failed to demonstrate it would likely suffer irreparable injury, and the balance of hardships tips in Defendant's favor. Further, the public interest is served by allowing for Defendant to remain open in the South Florida area. It is therefore, **ORDERED and ADJUDGED** that Plaintiff's Motion for Preliminary Injunction [D.E. 12] is **DENIED.**

**DONE and ORDERED** in chambers, at Miami, Florida, this 15th day of March 2010.

*/s/ Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of record*