UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-CV-61490-COOKE/BANDSTRA

```
----------------------------------------------------  x
                                                      :
PANDORA JEWELERS 1995, INC.,                          :
a Florida corporation,                                :
                                                      :
              Plaintiff,                              :
                                                      :    Consolidated Action
                                                      :
         -against-                                    :
                                                      :
                                                      :
PANDORA JEWELRY, LLC, et al.,                         :
                                                      :
              Defendants.                             :
                                                      :
----------------------------------------------------  x
```

**SUPPLEMENTAL MEMORANDUM OF LAW BY DEFENDANTS
ON THE ISSUE OF WHETHER LICENSEE ESTOPPEL APPLIES
WHERE A PARTY CLAIMS PRIOR USE OF A TRADEMARK**

Pursuant to the Court's Orders of April 11, 2011 (D.E. 188, 189), Defendants hereby submit a supplemental brief on the issue of whether licensee estoppel should be applied where a party claims prior use of the trademark in question. Further, Defendants' brief addresses this issue with respect to each mark at issue in the case. As set forth herein, the Plaintiff's claim of prior use creates no special status which would immunize it from the application of the doctrine of licensee estoppel. This doctrine is founded on the strong equitable principle that a beneficiary of a right should not be able later to destroy that same right it previously enjoyed based upon its own self-serving aims. The Court should use the doctrine of licensee estoppel here to deny Plaintiff any reward for its duplicitous conduct.

## Introduction

The equitable doctrine of licensee estoppel seeks to prevent attacks on the validity of trademark rights by those who had previously benefited by the permitted, or licensed, use of the mark. *Seven-Up Bottling Co. v. Seven-Up Co.*, 420 F. Supp. 1246, 1251 (E.D. Mo. 1976). The ability to license trademarks was firmly established by Congress in the passage of the Lanham

14925205v4

Act in 1946. 15 U.S.C. § 1127; MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, J. Thomas McCarthy, § 18:42 (4th ed., February, 2011). The commercial importance of licensing is reflected by the fact that many of the world's most recognizable brands achieved their far-reaching fame through the ability of their owners to license the use of their trademarks safely under the Lanham Act. THE LAW OF MERCHANDISE AND CHARACTER LICENSING § 1:3, Gregory J. Battersby & Charles W. Grimes (September, 2010). A trademark owner, however, must exercise control over the quality of its goods and services sold by licensees who conform to a trademark owner's standards for quality control. 15 U.S.C. § 1055; *Cotton Ginny, Ltd. v. Cotton Gin, Inc.*, 691 F. Supp. 1347, 1353 (S.D. Fla. 1988). The licensee, "by virtue of the agreement, recognize[s] the validity of the licensor's title during the course of the licensing agreement." *Prof'l Golfers Ass'n. of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 671 (5th Cir. 1975).[1] In this case, Plaintiff offered and sold Defendant Pandora's jewelry goods to Plaintiff's customers for four and a half years and enjoyed commercial success in doing so. Through written agreements, Defendant Pandora exercised control over Plaintiff's use of Defendant's PANDORA trademarks at all times during those four and a half years while Plaintiff recognized ownership of the PANDORA name and mark by Defendant Pandora. After profiting from use of Defendant's PANDORA marks, Plaintiff now seeks to destroy the very rights it had benefited from based on a claim of prior use. The equitable doctrine of licensee estoppel should be exercised by this Court to prevent such an unfair tactic from succeeding.

## Argument

**A.    Licensee Estoppel – An Equitable Remedy**

The Court's order of April 11 acknowledged the application of the doctrine of licensee estoppel here but inquired about the prior use issue since the "court remains free to consider the particular circumstances of the case, including the nature of the licensee's claim and the terms of the license." RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 33, 1995. As set forth below, Defendants establish that it is a suitable exercise of the Court's powers of equity to prevent the Plaintiff from using its claim of prior use to invalidate the PANDORA trademarks owned by Defendant Pandora.

---

[1] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

### B.     Plaintiff Agreed to Sell Defendant Pandora's Goods at Retail

Plaintiff set forth clearly in its Amended Complaint the conduct it undertook to become a licensee of Defendant Pandora and to use Defendant Pandora's trademarks to sell PANDORA jewelry products.  *See* D.E. 32, ¶¶ 31–33.  "In early 2004 Defendant Pandora LLC's Director of Sales…approached the Plaintiff asking Plaintiff to sell Defendant Pandora LLC's charm line under the trademark PANDORA in Plaintiff's store." D.E. 32, ¶ 31.  Plaintiff was aware by early 2004 that Defendant Pandora was using the name and mark PANDORA in connection with jewelry and in connection with the retail sale of jewelry goods bearing the PANDORA mark.  Instead of objecting to such use, Plaintiff agreed to participate in the use: "In late 2004 Defendant Pandora LLC's representative again approached Plaintiff about selling Defendant Pandora LLC's charm line under the PANDORA trademark…this time Plaintiff's President, Robert Wasson agreed." D.E. 32, ¶ 32.  Plaintiff then memorialized this agreement in writing on November 23, 2004 in a document setting forth the terms and conditions Plaintiff would have to adhere to in order to sell jewelry goods under "the distinctive PANDORA Mark". D.E. 14-2, Exhs. J, K.  It cannot be seriously disputed that, absent agreeing to Defendant Pandora's Terms and Conditions, Defendant Pandora would not supply Plaintiff and Plaintiff could not become an authorized retailer, with the right to offer and sell Defendant Pandora's jewelry products at retail under the PANDORA mark of Defendant Pandora.

Notably, the form of license executed by Plaintiff stated that Defendant Pandora considered "each and every Pandora customer a valuable asset to our fast growing enterprise and rel[ied] on [Defendant Pandora's] customers to actively and aggressively promote the Pandora line of jewelry products in North America" and that "Pandora [Defendant] has invested significant amounts of time, effort and financial resources to develop, market, monitor and control the quality and integrity of product produced under the PANDORA Mark." *Id*; D.E. 107, ¶ 11.

Following nearly two continuous years of sales of Defendant Pandora's jewelry, on September 13, 2006, Plaintiff executed a second agreement with Defendant Pandora, the Pandora Jewelry "Web Vendors Requirements" in order to continue Plaintiff's ability to sell Defendant Pandora's PANDORA jewelry through its website. D.E. 107, ¶ 17.  Among other terms, the Web Vendors Requirements agreement provides that: "As a customer of the Pandora brand of jewelry products and online vendor, you agree to update all Pandora logos on your site to reflect our new

logo with our registered trademark." D.E. 14-2, Ex. L.  This language and Plaintiff's agreement to it demonstrates that Plaintiff was not only aware of Defendant Pandora's claim to exclusive rights in and to the mark PANDORA for jewelry by virtue of Defendant Pandora's federal registrations, but that Plaintiff undertook to comply with the requirements for use of Defendant Pandora's PANDORA marks in order to sell Defendant Pandora's jewelry.

Soon thereafter, on or about September 29, 2008, a year before instituting this suit, Plaintiff executed Defendant Pandora's Master Purchase Authorization ("MPA") that was provided to Plaintiff by Defendant Pandora.[2]  D.E. 107, ¶ 22.  In Plaintiff's Responses to Defendant's First Set of Requests for Admissions Plaintiff admitted under Rule 36, F. R. Civ. P., that Plaintiff was an Authorized Retailer of Defendant Pandora from late 2004 through May, 2009 (No. 1); that Plaintiff executed the Pandora LLC Web Vendors Requirements (Nos. 8-13); and that Plaintiff executed the MPA (Nos. 14-20).  *See* Ex. G to the Declaration of Thomas H. Curtin in Support of Defendants' Motion for Summary Judgment (D.E. 106); *see also* D.E. 107, ¶¶ 11, 17, 22.

The very first paragraph of the MPA states:

> Pandora Jewelry, LLC ("Pandora") is the exclusive distributor of a line of jewelry products sold under the name and trademark Pandora Jewelry (Stylized) ®[1], as well as other names and trademarks owned by Pandora[2] ("Pandora Jewelry Products").  Pandora sells Pandora Jewelry Products only to a select group of authorized retailers who meet Pandora's high standards for representing the Pandora Jewelry (Stylized) ® brand image and reputation for quality.  Pandora is willing to sell to the Authorized Retailer identified above from time to time on a non-exclusive basis for the purpose of re-selling its line of Pandora Jewelry Products on a retail basis because of Authorized Retailer's reputation for customer service and offering high quality products, its location, marketing skills, retail brand recognition and quality of operation, all of which Pandora believes is consistent with, and will complement the brand name recognition, reputation and fame of Pandora Jewelry (Stylized) ®.

D.E. 14-2, Ex. M.  The footnotes referenced in this paragraph and printed on the first page of the MPA executed by Plaintiff are also reprinted here:



---

[2] The MPA became part of the record in this case on November 16, 2009 as Exhibit M and N to the Declaration of Laurie McDonald in support of Defendant Pandora's opposition to Plaintiff's motion for a preliminary injunction.  D.E. 14-2, Exs. M,N.

*Id*.  Appendix III to the MPA presents in detail the "Trademark Usage Standards" to which Plaintiff agreed to adhere to in connection with its use of Defendant Pandora's trademarks. Appendix III includes the statement that the usage standards "will strengthen [the trademarks'] legal protection against encroachment and enhance their communications effectiveness as well." Therefore, Plaintiff was not only participating in the sale of goods at retail under Defendant Pandora's trademarks, Plaintiff was an active participant in the promotion of Defendant's PANDORA marks as well as in its protection as against third parties.  In *Cotton Ginny, Ltd. v. Cotton Gin, Inc.*, the licensee's sale of goods manufactured by the licensor as well as visits to the licensee's store by representatives of the licensor to inspect the operation was deemed adequate control by the licensor over the licensee so that use of the "Cotton Ginny" mark was viewed by the Court as inuring to the benefit of the licensor.  *Cotton Ginny, Ltd. v. Cotton Gin., Inc.*, 691 F. Supp. at 1353.  Indeed, Plaintiff does not dispute that it sold Defendant Pandora's goods and displayed PANDORA posters, placards, and other branded point of purchase materials bearing these same federally registered trademarks in its store and advertised Defendant Pandora's federally registered trademarks prominently on its own website all in support of the retail sale of Defendant Pandora's PANDORA brand jewelry.  *See* D.E. 107, ¶¶ 6, 10, 31.

**C.    The Marks at Issue**

Plaintiff asks the Court to enjoin the Defendants from using Defendant Pandora's trademarks in the South Florida region and possibly throughout the United States.[3]  D.E. 32, ¶ 30.  The marks Plaintiff argues Defendants should not be permitted to use any longer are set forth in Plaintiff's Amended Complaint: PANDORA JEWELRY (stylized) for *jewelry* (U.S. Reg. No. 3,065,374) ; PANDORA UNFORGETTABLE MOMENTS for *jewelry and printed material* (U.S. Reg. No. 3,640,357); PANDORA (with crown device) for *jewelry and printed material* (U.S. Reg. No. 3,613,181); PANDORA (with crown device) for *retail store services* (U.S. Serial No. 77/690,744); and PANDORA for *perfume, sunglasses, jewelry and retail services* among other goods (U.S. Serial No. 79/069,628).  D.E. 32, ¶ 30.  The Court has requested that the parties address the question of the application of licensee estoppel with respect to each of the marks at issue in the case.  D.E. 189.  In accordance with the Court's denial of Plaintiff's motion

---

[3] Plaintiff has made inconsistent claims to exclusive geographic territories.

for a preliminary injunction, Defendants believe the PANDORA element in each of Defendant Pandora's marks is at issue in the case.[4]

### D. Plaintiff's Principal Claim of Invalidity is Based on Alleged Priority of Use

Plaintiff claims superior rights in the name and mark PANDORA in connection with jewelry and retail store services for jewelry based on Plaintiff's claimed prior use of that mark on its goods and services. D.E. 32, ¶ 18. Plaintiff first objected to Defendant Pandora's use of PANDORA by the filing of its original complaint on September 18, 2009. D.E. 1. Prior to that date, Plaintiff had never objected or otherwise complained that Defendant Pandora's use of the name and mark PANDORA was an act of trademark infringement or unfair competition or that Plaintiff has superior, prior rights to the exclusive use of the name and mark PANDORA. D.E. 107, ¶ 14. To the contrary, Plaintiff executed a number of agreements with Defendant Pandora, including, but not limited to, the MPA, under which Defendant Pandora agreed to supply Plaintiff with PANDORA jewelry. As an authorized PANDORA retailer, Plaintiff was required under its agreements with Defendant Pandora to recognize the ownership of Defendant Pandora's marks and adhere to the standards of use of Defendant Pandora's federally registered PANDORA trademarks in connection with the sale of "Pandora Jewelry Products" and in connection with "re-selling [Defendant Pandora's] line of Pandora Jewelry Products on a retail basis…". D.E. 14-2, Ex. M (first paragraph reprinted above). By word and deed, Plaintiff wholeheartedly partnered with Defendant Pandora in the latter's use of its PANDORA mark, recognizing Defendant Pandora's ownership of its brand.

The law of licensee estoppel as adopted and applied in the 11th Circuit acts to prevent former licensees from challenging the validity of a former licensor's trademarks where the grounds for the challenge arose either before or during the term of the license. *Prof'l Golfers Ass'n. of Am. v. Bankers Life & Cas. Co.*, 514 F.2d at 671. In *Professional Golfers* ("*PGA*"), the Court considered the view of some other courts that either held any estoppel expired with the end of the license or that such estoppel prevents *any* subsequent challenges by former licensees. *Id.* The Court then adopted an intermediate rule which holds that "after expiration of the license, a former trademark licensee may challenge the licensor's title on facts which arose *after* the

---

[4] Defendant Pandora also uses the stylized "O" crown device (U.S. Serial No. 77/251,504) both alone and in Defendant Pandora's other registrations but Plaintiff has not objected to this stylized use in particular to Defendants' knowledge except as part of the mark PANDORA. *See* U.S. Registration Nos. 3,613,181 & 3,646,357.

contract had expired." *Id.* (emphasis in original).  Applying this rule, the Court held that a former licensee's claims of abandonment based on facts which arose during the course of the license would be estopped.  *Id.*  In *Council of Better Business Bureaus, Inc. v. Better Business Bureau of South Florida, Inc.*, this Court applied the holding of *PGA* and found that a former licensee would be estopped from attacking the validity of the licensor's mark *on any ground* because the facts giving rise to the attack arose prior to the termination[5] of the licensee's affiliation with the licensor.  *Council of Better Bus. Bureaus, Inc. v. Better Bus. Bureau of S. Florida, Inc.*, Case No. 78-937, 1978 U.S. Dist. LEXIS 15903, *9-10 (S.D. Fla. 1978) (emphasis provided).  The Plaintiff's claim of priority (as well as fraud) is an attack on the validity of the trademark rights of defendants.

The facts giving rise to Plaintiff's claims of priority as against Defendant Pandora first arose when "[i]n early 2004 Defendant Pandora LLC's Director of Sales…approached the Plaintiff asking Plaintiff to sell Defendant Pandora LLC's charm line under the trademark PANDORA in Plaintiff's store." D.E. 32, ¶ 31.  Therefore, Plaintiff knew in early 2004 that Defendant Pandora was using the mark PANDORA in connection with jewelry and in connection with sales at retail of jewelry goods bearing the PANDORA mark.  Plaintiff knew about Defendant Pandora's use of the PANDORA mark in connection with jewelry and the retail sale of jewelry in "early 2004" and then entered a license agreement with Defendant Pandora to offer PANDORA brand jewelry goods at retail from its store in November, 2004 and continued to do so until May, 2009.  D.E. 32, ¶ 39.  Applying the rule of the 11th Circuit, the facts giving rise to Plaintiff's claims of invalidity or unenforceability that is a prior use claim, arose before Plaintiff's termination of the agreements with Defendant Pandora in May, 2009.  Thus, Plaintiff should be estopped from asserting any claims of invalidity or unenforceability against Defendant Pandora's trademarks "on any grounds", including priority as well as fraud.  *Council of Better Bus. Bureaus, Inc. v. Better Bus. Bureau of S. Florida, Inc.*, U.S. Dist. LEXIS 15903 at *9-10; *Prof. Golfers Ass'n. of Am. v. Bankers Life & Cas. Co.*, 514 F.2d at 671.

To avoid the imposition of licensee estoppel, Plaintiff will undoubtedly argue that the nature or quality of Defendant Pandora's use of its trademarks changed to include retail services after the termination of the license agreement, a distinction the Court has already rejected.  *See*

---

[5] It is undisputed that Plaintiff, not Defendant Pandora, terminated the parties' relationship in May, 2009.  D.E. 32, ¶ 39.

14925205v4                                    7

D.E. 30, p. 8.  Plaintiff's Amended Complaint and Responses to Defendant Pandora's Requests for Admission confirm its knowledge that Defendant Pandora's trademarks were used at retail because Plaintiff itself was doing so.  D.E. 32, ¶¶ 31, 32.  In addition, Plaintiff was aware as early as 2007 that Defendant Pandora was in the process of opening fully branded "concept stores" using the name and mark PANDORA.  Plaintiff actually wrote to Defendant Pandora for more information regarding these concept stores on January 10, 2007.  *See* Exhibit N to Declaration of Thomas H. Curtin in Support of Defendants' Motion for Summary Judgment (D.E. 106).  Therefore, any of Plaintiff's arguments that Defendant Pandora changed its use of its trademarks after the end of the licensing relationship with Plaintiff must fail.

E.      **The Trademark License Merger Rule**

A corollary of the doctrine of licensee estoppel, which expressly deals with priority issues, is the doctrine of merger, or the trademark license merger rule.  This deals explicitly with the prior use issue and licensing.  *See* MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 18:47.  "Under the merger rule, if: (1) party Alpha uses the mark and later becomes a licensee of Beta under the same mark; and (2) the Alpha-Beta license ends; then (3) Alpha cannot rely upon its prior independent use as a defense against an infringement claim brought against it by Beta. Alpha's prior trademark rights were 'merged' with that of Beta and inured to the benefit of Beta." *Id.*  Though Professor McCarthy illustrates this in the context of preventing a former licensee from using its prior use as a *defense*, or a shield, the principle is applicable where the former licensee asserts its prior use offensively, or as a sword.  "A licensee's prior claims of any independent rights to a trademark are lost, or merged into the license, when he accepts his position as licensee, thereby acknowledging the licensor owns the marks and that his rights are derived from the licensor and enure to the benefit of the licensor." *Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.*, 88 F. Supp. 2d 914, 923 (C.D. Ill. 2000).  *See also Nat'l Council of Young Men's Christian Ass'ns. of the United States of Am. v. The Columbia Young Men's Christian Ass'n. of Columbia, S.C.*, Case No. 3:86-3304-16, 1988 U.S. Dist. LEXIS 16535, *12-14 (D. S.C. 1988) (holding that "the defendant should not be permitted to assert a defense of prior use based on its use of the plaintiff's name or marks before it ratified the plaintiff's constitution and became a charter member of the national organization")).  In the *YMCA* case, the court considered whether a former affiliate's use of the YMCA trademarks since the 19th century, and prior to the time of its affiliation with the national YMCA body in 1923, would allow the former affiliate to

continue its use of the YMCA trademarks after it was no longer affiliated with the national YMCA body. *Nat'l Council of Young Men's Christian Ass'ns. of the United States of Am. v. The Columbia Young Men's Christian Ass'n. of Columbia, S.C.* at *12. The court in *YMCA* concluded that the doctrine of merger barred the former affiliate's claim of prior use. Consequently, the court in *YMCA* held that the former affiliate would not even be permitted to offer evidence of its prior use at trial. *Id*. at *14.

## Conclusion

The doctrine of licensee estoppel is founded on the strong equitable principle that a beneficiary of a right should not be able later to destroy that same right it previously enjoyed based upon its own self-serving aims. For all the reasons set forth herein, the Court should use the doctrine of licensee estoppel here to deny any reward to Plaintiff's duplicitous conduct because Plaintiff's claim of prior use creates no special status which would immunize it from the application of the doctrine of licensee estoppel.

Dated: April 18, 2011

Respectfully submitted,

| | |
|---|---|
| LATHROP & GAGE, LLP | By: ___s/ Kenneth R. Hartmann___ |
| William R. Hansen, Esq. | Kenneth R. Hartmann, Esq. |
| Thomas H. Curtin, Esq. | Florida Bar No. 664286 |
| Bridget A. Short, Esq. | Email: krh@kttlaw.com |
| Thomas J. FitzGerald, Esq. | James R. Bryan |
| *Admitted Pro Hac Vice* | Florida Bar No. 0696862 |
| 230 Park Avenue, Suite 2400 | Email: jrb@kttlaw.com |
| New York, NY 10169 | KOZYAK TROPIN & |
| Phone: (212) 850-6220 | THROCKMORTON, P.A. |
| Fax: (212) 850-6221 | 2525 Ponce de Leon Blvd., 9th Floor |
| | Coral Gables, Florida 33134 |
| | Phone (305) 372-1800 |
| | Fax (305) 372-3508 |
| *Attorneys for Pandora Jewelry, LLC,* | |
| *Carrie Ventures, LLC, HB Retail, Inc and* | *Attorneys for Pandora Jewelry, LLC,* |
| *Hopele of Fort Lauderdale, LLC.* | *Carrie Ventures, LLC, HB Retail, Inc. and* |
| | *Hopele of Fort Lauderdale, LLC* |

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served all counsel of record with a true and correct copy of the foregoing via CM/ECF on this 18th day of April, 2011 to all counsel of record.

                                                                By: s/ Kenneth R. Hartmann
                                                                 Kenneth R. Hartmann

324187v.1