## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.:  09-61490-Civ-COOKE/TURNOFF

PANDORA JEWELERS 1995, INC.,

  *Plaintiff*,

v.

PANDORA JEWELRY, LLC,

  *Defendant.*

_____/

### <u>OMNIBUS ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT</u>

THIS MATTER is before me on the Plaintiff's Motion for Partial Summary Judgment Against Defendant Pandora Jewelry, LLC (ECF No. 93), Plaintiff's Motion for Partial Summary Judgment Against Defendants Carrie Ventures, LLC and HB Retail Inc. (ECF No. 101), and Defendants' Motion for Summary Judgment Against Defendant Pandora Jewelers 1995, Inc. (ECF No. 106).  I have reviewed the arguments, the record, and the relevant legal authorities.  I will address the parties' arguments in turn

### I.  BACKGROUND

Plaintiff, Pandora Jewelers 1995, Inc. ("Pandora Inc."), is a full-service jeweler who owns a single store in a strip mall in Deerfield Beach, Florida.  Defendant, Pandora Jewelry, LLC ("Pandora LLC"), is a multinational, high-end jewelry designer and manufacturer that originally sold its products wholesale to independent jewelry stores but recently began opening retail stores in South Florida, and other locations.  Defendant, Carrie Ventures, LLC ("Carrie Ventures"), is a Florida company that owns and operates a retail jewelry store that exclusively sells Pandora LLC jewelry.  Defendant, HB Retail, Inc. ("HB Retail"), is a Massachusetts company that also owns and operates a retail jewelry store that exclusively sells Pandora LLC

1

jewelry.

Pandora Inc.

Pandora Inc. claims that it has used the trademarks "Pandora," "Pandoras," "Pandora Jewelers," and "Pandoras Jewelry" since 1976.   Pandora LLC disputes this fact, and states that Pandora Inc. has only used "Pandora Jewelers" as its principal mark for its retail store.  It is undisputed that Pandora Inc. does not own or market a brand of jewelry under any of these marks.  Instead, Pandora Inc. sells fine jewelry of various brands as well as designer handbags. It is also undisputed that, in addition to its physical location, Pandora Inc. maintains a website, "pandorajewelers.com," through which it has both advertised its retail jewelry services and sold jewelry since 1999.

Pandora Inc. claims that since at least 1995, it uses the name "Pandora" for its store, website, and product packaging.  Pandora Inc. claims it advertises in local newspapers, magazines, and movie theaters; on television, radio, billboards and bench ads; and through direct mail, e-mails and postcards.  Pandora Inc. promotes its mark in four local newspapers distributed in Miami-Dade, Broward, and Palm Beach counties (the "South Florida area").  According to Pandora Inc., approximately 6% of its sales occur outside of the South Florida area through its website, including in New York, Maryland, New Jersey, North Carolina, Pennsylvania, Ohio, and Massachusetts.  Over the course of thirty years, Pandora Inc. claims to have developed a reputation in its community for retail jewelry services.

Pandora LLC

Pandora LLC manufactures and distributes its own brand of jewelry.  Pandora LLC's most popular line of products is a charm jewelry line that allows the customer to design their own jewelry, selecting among many handcrafted charms or beads that clip onto bracelets and necklaces.  Defendant owns the patent for this particular charm jewelry clip system.

Additionally, Defendant owns several multi-piece jewelry collections.

The following facts regarding Pandora LLC's marks are undisputed.  Beginning in at least late 2003, Pandora LLC used the trademark, PANDORA *Jewelry* (the "Pandora Jewelry" mark). Pandora Smykker USA, Pandora LLC's predecessor company, filed a trademark application on September 21, 2004, for the Pandora Jewelry mark.  On March 7, 2006, the PTO issued a Trademark Registration to Pandora LLC for the Pandora Jewelry mark for jewelry.  *See* U.S. Reg. 3,065,374.  On August 9, 2007, Pandora LLC filed a trademark application for the mark PANDŎRA˘ UNFORGETTABLE MOMENTS (the "Pandora Unforgettable Moments" mark).  Also on August 9, 2007, Pandora LLC filed a trademark application for the mark PANDŎRA˘ (the "Stylized Pandora" mark).  On June 16, 2009, the PTO issued a Trademark Registration to Pandora LLC for the Pandora Unforgettable Moments mark for jewelry and advertising materials.  *See* U.S. Reg. No. 3,640,357.  On April 28, 2009, the PTO issued a Trademark Registration to Pandora LLC for the Stylized Pandora mark for jewelry and advertising materials.  *See* U.S. Reg. 3,613,181.  On March 13, 2009, Pandora LLC's filed a Trademark/Service Mark Application requesting registration of the Stylized Pandora mark for retail store services.

Business Relationship between Pandora Inc. and Pandora LLC

Pandora Inc. and Pandora LLC maintained a business relationship for approximately four and a half years.  It is undisputed that in November 2004 Pandora Inc. became an authorized retailer for Pandora LLC's products.[1]  Pandora Inc. was not Pandora LLC's exclusive authorized retailer; Pandora LLC had other authorized retailers in the South Florida area, as well as other U.S. locations.  On around September 2006, Pandora Inc. and Pandora LLC entered into a "Web Vendors Requirements" contract, which permitted Pandora Inc. to sell Pandora LLC jewelry

---

[1] Pandora LLC states that Pandora Inc. executed its standard "Terms and Conditions" contract. Pandora Inc. disputes this fact, but admits it was one of Pandora LLC's authorized retailers.

products on Pandora Inc.'s website.  Pandora Inc. purchased Pandora LLC's jewelry at wholesale prices, sold Pandora LLC's jewelry at marked-up retail prices, and advertised Pandora LLC's jewelry prominently in its store and on its website.  On around September 29, 2008, Pandora LLC and Pandora Inc. entered into a Master Purchase Authorization contract ("MPA"), which replaced the prior "Terms and Conditions" contract.  The MPA expressly stated that Pandora LLC owns the following trademarks for its line of jewelry:  the Pandora Jewelry mark, the Stylized Pandora mark, the Pandora Unforgettable Moments mark, and the stylized "O" by itself.

On December 18, 2008, Pandora Jewelry A/S, a company affiliated with Pandora LLC, filed a complaint with Google, Inc. ("Google") to stop approximately 67 third parties, including Pandora Inc., from using Pandora LLC's registered trademarks as AdWords.  Google AdWords is a program that lists businesses as "sponsored links" when a user runs a search for certain keywords.  In response to this complaint, Google terminated Pandora Inc.'s ability to use Pandora LLC's registered marks as AdWords.  Thus, when a user enters certain Pandora-related terms, Google's search results no longer prominently display Pandora Inc.'s website as a "sponsored link."

 In May 18, 2009, Pandora Inc. terminated its business relationship with Pandora LLC.

Pandora LLC's Business Expansion

It is undisputed that in November 2007, Pandora LLC opened its first stand-alone retail store, which Pandora LLC calls a "concept store," that exclusively sold Pandora LLC's jewelry products.  According to Pandora Inc., in 2007, Pandora LLC used the "Pandora Jewelry" mark for these stores.  In January 2007, Pandora LLC sent to all of its authorized retailers, including Pandora Inc., a newsletter regarding the new concept stores.  On January 10, 2007, Tyler Wasson of Pandora Inc. sent an e-mail to Alan Strott of Pandora LLC stating that he had read the article "about getting flagship stores," and requesting further information "regarding the new concept."

4

It is unclear whether Pandora LLC ever responded to this e-mail.

As of November 2009, there were thirty-five concept stores in the United States, including five stores in Florida, in the cities of Tampa (opened May 2008), Naples (opened July 2009), Plantation (opened October 2009), Orlando (opened November 2009), and Boca Raton (opened around December 2009).  According to Pandora Inc., Pandora LLC began using the name "Pandora," alone, for its stores when it opened stores in the South Florida area.

<u>Carrie and HB Retail</u>

On October 19, 2009, Pandora LLC entered into a license agreement with HB Retail for HB Retail to operate a retail store under the name Pandora at the Westfield Broward Mall, in Fort Lauderdale.  This was the first concept store Pandora LLC opened in South Florida.

Carrie Ventures was a Pandora authorized retailer since 2005.  On November 27, 2009, Carrie Ventures began operating a retail store under the name Pandora at Town Center at Boca Raton, in Boca Raton, Florida.  On March 10, 2010, Pandora Franchising LLC and Carrie Ventures entered into a franchise agreement.

## II. LEGAL STANDARDS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).  Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).  A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

### III. ANALYSIS

#### A. Defendants' Affirmative Defenses

1. Defendants Seek Summary Judgment based on Affirmative Defenses

In their Motion for Summary Judgment, Defendants raise three affirmative defenses to all of Pandora Inc.'s federal and state trademark infringement claims and state common law unfair competition claims (Counts I through VIII and XI of Pandora Inc.'s Amended Complaint)[2]:

---

[2] Pandora Inc. argues that Defendants impermissibly attempt to apply their equitable defenses to all of Pandora Inc.'s claims.  Although Defendants are not clear as to the Counts of the Plaintiff's Complaint to which their Motion applies, Defendants state "Plaintiff has asserted claims of trademark rights an [*sic*] infringement claims under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and ancillary Florida common law unfair competition," and their affirmative defenses "constitute a complete bar against all of Plaintiff's infringement claims."  Def.'s Mot. 3.

(i) laches, (ii) licensee estoppel; and (iii) application of the merger rule.  Pandora Inc. argues that the doctrines of unclean hands and progressive encroachment preclude Defendants from asserting any equitable defenses.

### *Laches*

Under the defense of laches, a defendant must show (1) a delay in the plaintiff's assertion of a right or claim; (2) the delay was not excusable; and (3) the delay caused undue prejudice. *Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540, 1546 (11th Cir. 1984).  Application of this doctrine is flexible and entails an examination of the amount of delay and the prejudice caused by the delay.  *Id*.  Whether a defendant's delay is excusable requires an examination into the reasons for the delay.  *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1345 (11th Cir. 1996).  "Because the Lanham Act does not contain a statute of limitations, the period for analogous state law claims is to be used as a touchstone for laches."  *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1546 (11th Cir. 1986).  The limitations period for trademark claims in Florida is four years.  *Id*.

The doctrine of progressive encroachment is relevant to a court's assessment of whether a plaintiff satisfies the first element of the laches defense to a trademark claim.  *See Kason Indus., Inc. v. Component Hardware Group, Inc*. 120 F.3d 1199, 1206 (11th Cir. 1997).  "Under this doctrine, where a defendant begins use of a trademark or trade dress in the market, and then directs its marketing or manufacturing efforts such that it is placed more squarely in competition with the plaintiff, the plaintiff's delay is excused."  *Id*. at 1205.  Under the doctrine of progressive encroachment, "delay is to be measured from the time at which the plaintiff knows or should know she has a provable claim for infringement."  *Id*. at 1206.

Defendants correctly note that Pandora Inc. knew of Pandora LLC's marks since at least

Thus, Defendants seek summary judgment only with respect to Pandora Inc.'s infringement and common law unfair competition claims.

2004, but did not act until September 18, 2009, when it filed the present action.  Thus, Pandora Inc. delayed approximately five years before filing a suit.  Pandora Inc. argues that the doctrine of progressive encroachment applies to excuse its delay in suing Pandora LLC because Pandora LLC changed the use of its mark from a jewelry brand to retail store services.  Defendants argue that Pandora LLC's growth constitutes normal growth, not progressive encroachment.  *See Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102,1110 (9th Cir. 2006) ("A junior user's growth of its existing business and the concomitant increase in its use of the mark do not constitute progressive encroachment. . . . [G]rowth alone does not infringement make.").

　　　To establish progressive encroachment, rather than mere natural growth, a plaintiff must show that "the alleged infringer at first 'sold different products in a different market through different distribution channels' later coming in direct competition with the plaintiff." *Kason Indus., Inc.*, 120 F.3d at 1206 (quoting S*unAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1345 (11th Cir. 1996)); *see also Tillamook Country Smoker, Inc.*, 465 F.3d at 1110.  I must determine in which markets Pandora LLC and Pandora Inc. use their marks. Pandora Inc. claims that the geographic scope of the use of its trademark is the South Florida area.  Pandora Inc. also claims that its use of its trademarks is national in scope because it has made internet sales to customers in other U.S. states.  Defendants dispute Pandora Inc.'s characterization of the geographical scope of its trademark use.  Because Defendants are the moving parties, they bear the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  They have not met this burden.  The geographic scope of Pandora Inc.'s use of its marks is a genuine issue of material fact.  Without a definition of the market at issue here, I cannot determine the first element of the laches defense—whether Pandora Inc. delayed in bringing its claims against each of the

defendants—because there are issues of material fact regarding the application of the doctrine of progressive encroachment.  Whether the defense of laches applies cannot be decided on summary judgment.

### Licensee Estoppel

"[A] licensee is estopped to contest the validity of the licensor's title during the course of the licensing arrangement. . . . The licensee has, by virtue of the agreement, recognized the holder's ownership."  *Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 671 (5th Cir. 1975).  Because licensee estoppel is an equitable doctrine a "court remains free to consider the particular circumstances of the case, including the nature of the licensee's claim and the terms of the license."  *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc*., 43 Fed. Appx. 408, 414 (2d Cir. 2002) (quoting Restatement (Third) Unfair Competition § 33) (internal quotations omitted)).

The Eleventh Circuit recognizes the principle that "after expiration of the license, a former trademark licensee may challenge the licensor's title on facts which arose after the contract has expired."  *Prof'l Golfers Ass'n of Am.*, 514 F.2d at 671.  Thus, the rule in this circuit is that a former licensee is not forever banned from challenging a holder's valid ownership.  *Id*. (recognizing varying approaches in other circuits).

Pandora Inc. argues that it did not have a licensing agreement with Pandora LLC. Instead, Pandora Inc. claims it was merely Pandora LLC's customer.  Pandora LLC provides sufficient evidence to establish that it had a licensing agreement, either express or implied, through which Pandora Inc. could use Pandora LLC's trademark to sell Pandora LLC goods.

The parties' Master Purchaser Authorization ("MPA") provided:

Pandora Jewelry, LLC ("Pandora) is the exclusive distributor of a line of jewelry products sold under the name and trademark [PANDORA *jewelry*], as well as other names

and trademarks owned by Pandora [PANDORA, PANDORA, and the Stylized O by itself] ("Pandora Jewelry Products").   Pandora sells Pandora Jewelry Products only to a select group of authorized retailers who meet Pandora's high standards for representing the Pandora Jewelry (Stylized) brand image and reputation for quality.   Pandora is willing to sell to the Authorized Retailer identified above [Pandora Inc.] from time to time on a non-exclusive basis for the purpose of re-selling its line of Pandora Jewelry Products on a retail basis because of Authorized Retailer's reputation for customer service and offering high quality products, its location, marketing skills, retail brand recognition and quality of operation, all of which Pandora believes is consistent with, and will complement the brand name recognition, reputation, and fame of Pandora Jewelry (Stylized).

Additionally, the parties' "Web Vendors Requirements" contract stated in relevant part, "as a customer of the Pandora brand of jewelry products and online vendor, you agree to update all Pandora logos on your site to reflect our new logo with our registered trademark."

The fact that these contracts do not expressly state that Pandora LLC confers to Pandora Inc. a license does not defeat the equitable defense of licensee estoppel.  Parties do not need an express writing for a court to find that a license relationship exists.  *Council of Better Business Bureaus, Inc. v. Better Business Bureaus of So. Fla., Inc*., No. 79-937, 1978 WL 21729, at *4 (S.D. Fla. Aug. 22, 1978) (holding that a license relationship existed in view of by-laws providing that members "shall be entitled to display the appropriate emblem of the Council . . . [and] use the name 'Better Business Bureau'" along with defendant's use of plaintiff's registered trademark over several years).  Indeed, "[i]n some circumstances . . . the entire course of conduct between a patent or trademark owner and an accused infringer may create an implied license." *McCoy v. Mitsuboshi Cutlery, Inc*., 67 F.3d 917, 920 (Fed. Cir. 1995).  The following conduct may create an implied license:

Any language used by the owner of the [intellectual property] or any conduct on his part exhibited to another from which that other may properly infer that the owner consents to his use of the [intellectual property] in making or using it, or selling it, upon which the other acts, constitutes a license and a defense to an action....

*Id*. (quoting *De Forest Radio Tel. Co. v. United States*, 273 U.S. 236, 241 (1927)).

10

Pandora Inc. admits that it was one of Pandora LLC's authorized retailers from late 2004 to May 2009.  Pandora Inc. sold Pandora-brand jewelry items at its store and through its website.  In so doing, Pandora Inc. advertised and marketed the Pandora jewelry brand name.  The parties' contracts indicate that Pandora LLC consented to, and intended for, Pandora Inc.'s use of Pandora LLC's trademarks when advertising Pandora LLC's jewelry items.  Thus, Pandora LLC has established sufficient facts to show that, through the parties' course of conduct, Pandora LLC licensed the use of the trademarks identified in the MPA to Pandora Inc. for advertising and sales.

As noted above, because licensee estoppel is an equitable doctrine I may consider the particular circumstances of the case, including the nature of the licensee's claim and the terms of the license.  Pandora Inc.'s license limited Pandora Inc. to using Pandora LLC's trademark to advertise goods during the period of the license.  Indeed, the MPA states that Pandora LLC would sell its jewelry products to Pandora Inc. "for the purpose of re-selling *its line of Pandora Jewelry Products* on a retail basis."  The nature of Pandora LLC's license did not cover use of the mark as the name of *retail stores* or to advertise *retail services*.  Pandora Inc. challenges Pandora LLC's use of its marks as the name of retail stores.  Moreover, Pandora LLC opened "concept stores" in South Florida beginning in October 2009, after the parties ended their business relationship.  Licensee estoppel does not apply to these claims because (i) the parties did not have a license relationship with respect to use as a retail store name, and (ii) Pandora Inc. may properly challenge Pandora LLC's use of the trademark based on facts that occurred after May 2009, when the license relationship ended.  Summary judgment is entered in favor of Pandora Inc.[3]  Pandora LLC's affirmative defense of licensee estoppel is stricken.  Pandora Inc.

---

[3] A court may enter summary judgment in favor of the non-moving party "where a legal issue has been fully developed, and the evidentiary record in complete."  *See Artistic Entertainment, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003).

may raise trademark infringement claims in connection with Pandora LLC's use of the

"Pandora" marks for the name of its retail stores.

### Merger Rule

Pandora LLC also makes a separate argument that the merger rule bars Pandora Inc.'s

claims.  McCarthy on Trademarks describes the merger rule as follows:

> Under the merger rule, if: (1) party Alpha uses the mark and later becomes a licensee of Beta under the same mark; and (2) the Alpha-Beta license ends; then (3) Alpha cannot rely upon its prior independent use as a defense against an infringement claim brought against it by Beta. Alpha's prior trademark rights were "merged" with that of Beta and inured to the benefit of Beta.

4 McCarthy on Trademarks § 25:32.  Another court has expressed the rule, as such:

> A licensee's prior claims of any independent rights to a trademark are lost, or merged into the license, when he accepts his position as licensee, thereby acknowledging the licensor owns the marks and that his rights are derived from the licensor and enure to the benefit of the licensor.

*Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc*., 88 F. Supp. 2d 914, 923 (C.D. Ill. 2000).

Pandora LLC does not provide any binding precedent — or any case law from a U.S.

Court of Appeals — that establishes that the merger rule is a doctrine separate from licensee

estoppel.  In fact, the merger rule appears to conflict with *Professional Golfers Association of*

*America*, which held that "after expiration of the license, a former trademark licensee may

challenge the licensor's title on facts which arose after the contract has expired."  514 F.2d at

671.  There, the court specifically noted, "a licensee affirms his licensor's ownership of the mark

by entering into the agreement, but the straightjacket effect does not last interminably."  *Id.*

McCarthy on Trademarks cites one case from the Southern District of Florida, *Council of*

*Better Business Bureaus, Inc. v. Better Business Bureaus of So. Fla., Inc*., No. 79-937, 1978 WL

21729, at *4 (S.D. Fla. Aug. 22, 1978).  There, the court stated:

> [T]he Courts have repeatedly held that any separate existence and right to use a national organization's name or mark which a seceding local chapter might have had prior to affiliation with the national, was merged with that of the national

> when the local became a member of the national organization, thus rejecting contentions that prior independent existence and prior use of the mark in question entitled a seceding member to continue using the mark subsequent to disaffiliation.

The application of the merger rule in *Council of Better Business Bureaus* appears to be limited to the facts at issue there, i.e., where a local chapter merges with a national chapter, a seceding member cannot claim prior use of the mark after disaffiliation with the national chapter. Pandora Inc. was never an entity affiliated to Pandora LLC. Because Pandora LLC has failed to fully brief this issue, I cannot grant summary judgment on the application of the merger rule.

### *Pandora Inc.'s Claim of Unclean Hands with respect to Pandora LLC*

In its Opposition to Pandora LLC's Motion, Pandora Inc. states that the doctrine of unclean hands bars Pandora LLC's equitable defenses of laches and licensee estoppel. To invoke the unclean hands defense, a party must show: (1) that the wrongdoing is directly related to the claim against which it is asserted; and (2) even if directly related, one party's wrongdoing does not bar relief unless the opposing party can show that it was personally injured by such conduct. *Immuno Vital, Inc. v. Golden Sun, Inc.*, 49 F. Supp. 2d 1344, 1358 (S.D. Fla. 1997). Specifically, in the trademark context, the unclean hands defense "springs from the rationale that the plaintiff should not in his trade mark, or in his advertisements and business, be himself guilty of misleading representation. To show that a trademark plaintiff's conduct is inequitable, defendant must show that plaintiff used the trademark to deceive consumers." *Japan Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866, 870 (9th Cir. 2002). Pandora Inc. points to facts regarding Pandora LLC's business strategies, alleged customer confusion, and Pandora LLC's business organization to show that Pandora LLC used the Pandora marks to deceive customers and personally injure Pandora Inc. Pandora LLC disputes these facts and argues that there was no deception or customer confusion. There are genuine issues of material facts regarding whether Pandora LLC's used the Pandora marks to deceive or confuse customers

resulting in injury to Pandora Inc.  Whether the doctrine of unclean hands bars Pandora LLC's equitable defenses is an issue of fact to be determined by the jury.

2.  Pandora Inc. Seeks Summary Judgment on Inapplicability of Retail Defendants' Affirmative Defenses

In its Motion for Partial Summary Judgment against Carrie Ventures and HB Retail (the "Retail Defendants"), Pandora Inc. argues that the Retail Defendants cannot establish certain of their affirmative defenses.  I will discuss each affirmative defense in turn.

### Subject Matter Jurisdiction, Economic Loss Doctrine, and Justification

As to the affirmative defenses of lack of subject matter jurisdiction, economic loss doctrine, and justification, the Retail Defendants withdrew these affirmative defenses on June 1, 2010.  *See* ECF No. 61, at 14.

### Waiver and Unclean Hands

As to the defenses of waiver and unclean hands, Pandora Inc. makes summary arguments without reference to any facts or a discussion of the elements of each defense, leaving the Court to infer what the arguments would or should be.  As to waiver, Pandora Inc.'s entire argument is that " the waiver defense has no root in trademark law."  As to unclean hands, Pandora Inc.'s argument is that the defense "requires Plaintiff's wrongdoing be directly related to the claim against which it is asserted and injury to the Retail Defendants by Plaintiff's conduct."  Because Panora Inc. failed to fully brief these arguments, summary judgment is denied as to these affirmative defenses.

### Licensee Estoppel

Pandora Inc. argues that the Retail Defendants cannot assert a licensee estoppel defense because Pandora Inc. and the Retail Defendants did not have a license relationship.  Retail Defendants argue that, as Pandora LLC's licensees, they stand in its shoes and can assert the

licensee estoppel defense.[4]  It is undisputed that Pandora Inc. and the Retail Defendants did not have a license relationship.  The affirmative defense fails because the first element of licensee estoppel does not exist.  Even if they could stand in Pandora LLC's shoes, I have found that Pandora LLC's licensee estoppel defense fails.  Thus, the same result follows as to the Retail Defendants.

### Acquiescence, Estoppel Defenses, and Laches

Pandora Inc. argues that the Retail Defendants cannot assert acquiescence, estoppel, or laches defenses because each of these defenses require Plaintiff's undue delay in bringing an action for trademark infringement.  Retail Defendants argue that, as licensees, they stand in Pandora LLC's shoes and can assert these defenses for Pandora LLC.[5]  I already addressed this issue in my Order on Plaintiff's Motion to Strike Affirmative Defenses (ECF No. 170):

> A claim for false designation of origin under Section 43(a) of the Lanham Act may be brought "by any person who believes that he or she is or is likely to be damaged" by the false designation of origin. 15 U.S.C. 1125(a)(1); *see also Phoenix of Broward, Inc. v. McDonald's Corp.,* 489 F.3d 1156, 1163 (11th Cir. 2007). Given the broad standing inquiry under Section 43(a), the Defendants, as nonexclusive licensees, would have standing to bring a false designation of origin claim, essentially asserting the rights of Pandora LLC, the licensor. It naturally follows, that these Defendants must also be able to assert the defenses of Pandora LLC in defending a false designation of origin claim. The Defendants, as licensees, are standing in the shoes of Pandora LLC, as licensor. Just as these Defendants, as licensees, would be permitted to use a Section 43(a) claim as a sword, these Defendants may use the equitable defenses, applicable to Pandora LLC, as a shield in defending the Plaintiff's Section 43(a) claim.

Pandora Inc. has not put forth any new arguments that alter this decision.  Thus, Retail Defendants' acquiescence, estoppel, and laches affirmative defenses remain, to the extent that Pandora LLC may still raise these defenses.

---

[4] In their Opposition to Pandora Inc.'s Motion, Retail Defendants summarize Pandora LLC's arguments with respect to licensee estoppel, and argue that this defense warrants entry of judgment in Retail Defendants' favor.  Because I have already analyzed those issues above, I will not restate them here.

[5] In their Opposition to Pandora Inc.'s Motion, Retail Defendants summarize Pandora LLC's arguments with respect to laches and argue that this defense warrants entry of judgment in Retail Defendants' favor.  Because I have already analyzed those issues above, I will not restate them here.

**B. Count II – False Designation of Origin under Section 43(a) of the Lanham Act (Against Carrie Ventures) and Count III – False Designation of Origin under Section 43(a) of the Lanham Act (Against HB Retail)**

Pandora Inc. agues that it is entitled to summary judgment on the issue of liability and a permanent injunction on its federal trademark infringement claims against Carrie Ventures and HB Retail.  Section 43(a) of the Lanham Act prohibits the use in interstate commerce of any "word, term, name, symbol or device, . . .  or any false designation of origin . . . which is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. § 1125(a).  "To establish a prima facie case of trademark infringement under § 43(a), a plaintiff must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010).  To evaluate whether a likelihood of confusion exists, a court must consider the following factors:  "(1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public."  *Id*. at 774-75.  "The last factor, actual confusion in the consuming public, is the most persuasive evidence in assessing likelihood of confusion."  *Id*. at 779.  However, "'actual confusion' evidence collected by employees of a party in a trademark action must be viewed with skepticism because it tends to be biased or self-serving."  *Citizens Fin. Grp.. Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 122 (3d Cir. 2004).

To show a likelihood of confusion, Pandora Inc. has offered evidence of actual confusion

in the form of employee affidavits and employee-collected evidence. Pandora Inc. points to two affidavits—one by Tyler Wasson, who has run the Pandora Inc. business with his father since 2001 and another by Kim Turner, a Pandora Inc. sales associate. The statements in Mr. Wasson's declaration regarding actual confusion amount to inadmissible hearsay. Ms. Turner's declaration recounts her experiences at a bridal show where several customers appeared to confuse Pandora Inc. and Pandora LLC.

Pandora Inc. also offers as evidence a "confusion log" where employees made note of customer comments and inquiries. Some of the entries consist of hearsay, which I cannot consider here. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). The confusion log also contains several entries that do not necessarily advance Pandora Inc.'s position—they are entries regarding customers' requests for Pandora LLC charm bracelets or other jewelry products. Pandora Inc. itself admits that it sold Pandora LLC jewelry products for at least 4 and a half years. It is therefore unremarkable that customers might come to the store in search for those products that the Pandora Inc. store used to sell. Defendants argue that genuine issues of material fact exist as to the likelihood of confusion. I agree. I do not find that there is "ample undisputed evidence" before me of actual confusion, which might warrant summary judgment on the merits of this claim. *Cf. Alliance Metals, Inc. of Atlanta v. Hinley Indus., Inc.*, 222 F.3d 895, 908 (11th Cir. 2000). Additionally, because a court may only issue a permanent injunction when the plaintiff shows actual success on the merits, I cannot enter a permanent injunction at this point. *See Klay v. United HealthGroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004).

**C. Count VI – Florida Common Law Trademark Infringement (Against Carrie Ventures) and Count VII – Florida Common Law Trademark Infringement (Against HB Retail)**

Pandora Inc. seeks summary judgment on the issue of liability and a permanent injunction on its Florida common law trademark infringement claims against Carrie Ventures

and HB Retail. "The elements required to prevail on a claim of common law trade name and service mark infringement are the same as those required to prevail under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) or under a claim for common law unfair competition." *Am. United Life Ins. Co. v. Am. United Ins. Co.*, 731 F. Supp. 480, 486 (S.D. Fla. 1990). Because summary judgment is denied as to Counts II and III, the same result follows here. Similarly, I cannot issue a permanent injunction for the same reasons stated above.

### D.  Count IX – Cancellation of Defendant Pandora LLC's Improper Federal Registrations and Abandonment of Applications Pursuant to 15 U.S.C. § 1119

Pandora Inc. and Defendants have filed cross motions for summary judgment on Count IX of Pandora Inc.'s Amended Complaint. Pandora Inc. seeks to cancel Pandora LLC's federal registration on three general grounds:  (i) invalidity based on 15 U.S.C. § 1052(d); (ii) invalidity based on failure to meet "successor" requirement and failure to meet assignment requirements under 37 C.F.R. § 3.16; and (iii) invalidity based on false oaths and representations, and fraud on the PTO.

To succeed on a petition for cancellation, a plaintiff must prove "(1) [t]hat it has standing to petition for cancellation because it is likely to be damaged, and (2) that there are valid grounds for discontinuing registration." *Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1557 (11th Cir. 1991). If "the mark at issue has been on the federal Principal Register in registrant's name for less than five years, the mark may be cancelled if petitioner can prove that the registration should have been barred in the first instance under Lanham Act § 2." *Id.* Pandora LLC's marks have been on the federal Principal Register for less than five years.

#### 1.  Invalidity based on 15 U.S.C. § 1052(d)

Pandora Inc. seeks cancellation of Pandora LLC's federal registrations based on 15 U.S.C. § 1052(d), on the ground that Pandora Inc. was the prior user of the mark, which is confusingly similar to the registrant's (Pandora LLC's) mark. Under section 1052(d), "no

trademark . . . shall be refused registration . . . unless it . . . consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive."  As I noted above, there is a genuine issue of material fact as to the whether a likelihood of confusion exists in this case.  Summary judgment is improper.

2.   Invalidity based on failure to meet "successor" requirements

Next, Pandora Inc. seeks cancellation of Pandora LLC's federal registration on the ground that Pandora Smykker USA improperly assigned its rights to Pandora LLC.  Pandora LLC argues that I should dismiss this claim because it is a new claim not contained in Pandora Inc.'s Amended Complaint.  I agree.[6]  Pandora Inc. makes only three factual allegations to support Count IX of its Amended Complaint.  In particular, it alleges that Pandora LLC fraudulently procured its federal trademark registrations and applications because it made false statements to the PTO, and Pandora LLC committed and continues to commit such fraud. Pandora Inc. makes no allegations regarding Pandora Smykker USA.  Pandora Inc.'s entire Amended Complaint focuses on allegations only as to the entity Pandora LLC; it makes no allegations that Pandora Smykker USA improperly assigned its rights to Pandora LLC.  In fact, Pandora Inc. makes no allegations whatsoever about the assignment of any rights to Pandora LLC.[7]

---

[6] In each count of the Plaintiff's Amended Complaint, Plaintiff incorporates by reference all of the general allegations of fact contained in the beginning of the Amended Complaint.  As a result, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 365, 366 (11th Cir. 1996) (addressing shotgun pleading); *see also Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991) (where a pleading is "replete with factual allegations that could not possibly be material to any of the causes of action they assert . . . anyone schooled in the law who read these complaints . . . would know that many of the facts alleged could not possibly be material to all of the counts.").

[7] In its Motion, Pandora Inc. states that Pandora LLC made certain false statements to the PTO in connection with the trademark assignment, but the document Pandora Inc. references indicates that Pandora Smykker USA, not Pandora LLC, signed the assignment documents at issue.  *See* Exh. 23.

A party may not raise new claims at the summary judgment stage. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004).  Instead, "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint" pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. *Id*. at 1315.  Pandora Inc. is not merely asserting additional facts in support of its claim; rather, it is asserting an additional, separate basis for recovery. *See Hulbert v. St. Mary's Health Care Sys., Inc*., 439 F.3d 1286, 1296-97 (11th Cir. 2006).

Pandora Inc. states that this new claim does not amount to unfair surprise because it sent a letter to Pandora LLC on August 17, 2010, stating that it would raise the false assignment issue in its motion for summary judgment.  "[I]ssues not raised in the pleadings may be treated as if they were properly raised when they are tried by express or implied consent of the parties, or are included in a pretrial order," and no party "objects to the assertion of a claim without the filing of a supplemental pleading." *Steger v. Gen. Elec. Co*., 318 F.3d 1066, 1077 & n.11 (11th Cir. 2003).  Pandora Inc. argues that Pandora LLC did not object in its August 20, 2010 response, and notes, "this was, in [Pandora LLC's] view, 'no more than a rehash of issues raised in June.'" Pl.'s Reply 8.  The quoted material from Pandora LLC's letter actually refers to a motion to compel discovery. *See* Exh. IX ("To the extent your August 17 letter is a 'meet and confer' in advance of a motion to compel discovery, it is not more than a rehash of the Plaintiff's document requests . . . .").  Moreover, Pandora Inc. fails to cite any authority to support its argument that this would constitute a waiver of its objections to the new claims.  Because Pandora Inc. did not raise the false assignment claim in its Amended Complaint, it is not entitled to raise it now, in the midst of summary judgment.

3.   Invalidity based on False Oaths

Pandora Inc. identifies two instances where Pandora LLC made false oaths to the PTO.

*See* Exhs. 21FF, 28F.  Pandora LLC argues that I should grant summary judgment in its favor because Pandora Inc. cannot show Pandora LLC made any false statements.

Under 15 U.S.C. § 1120, any person who procures a registration "by a false statement" may be liable in a civil action.  Under 15 U.S.C. § 1051(a), the application for use of a trademark must contain a verified statement regarding the applicant's knowledge or belief regarding the accuracy of the application and the existence of any other user's right to the same or a similar mark.  It is established that "the oath in an application for registration must be truthful."  *Rosso & Mastracco, Inc. v. Giant Food Inc*., 720 F.2d 1263, 1266 (Fed. Cir. 1983).  The oath, however, does not require an applicant to disclose all other persons who may be using the mark; it only requires an applicant to disclose those persons who the applicant believes possesses the *legal right* to use the mark.  *Wurzburger Hofbrau Aktiengesellschaft v. Schoenling Brewing Co*., 331 F. Supp. 497, 505 (S. D. Ohio 1971), *aff'd* 175 U.S.P.Q. 391 (6th Cir. 1972); *see also Money Store v. Harriscorp Finance, Inc*., 689 F.2d 666, 671 (7th Cir. 1982) (holding that applicant has no duty to investigate and disclose to the PTO all other possible users of the same or similar mark).  The Federal Circuit has stated:

> [I]n some instances a senior user would be making a false oath where he fails to acknowledge conflicting rights of a junior user which are clearly established, for example, by a court decree, by the terms of a settlement agreement, or by a registration.  However, the rights of a junior user must be clearly established and must be in an identical mark or one so similar as to be clearly likely to cause confusion.

*Id*.

In *Rosso and Mastracco, Inc*., the parties disputed whether there was a likelihood of confusion in connection with the use of the mark.  *Id*.  The court concluded, "[s]ince the issue of likelihood of confusion was not a clear and simple one, and was not resolved until this decision, we cannot on this record say that the oath was knowingly false."  *Id*.  McCarthy on Trademarks reflects a similar view:  "The signer of an application oath should not be put in the position of a

fortune teller as to what the courts will hold in the future as to the trademark rights of others." 2 McCarthy on Trademarks §31:76.

Pandora Inc. has not provided sufficient facts to show that Pandora LLC made a false oath to the PTO.  Defendants, however, also fail to submit sufficient evidence to meet their burden to show that there are no issues of material fact as to this claim.  Thus, I will not grant summary judgment in favor of either party.

### 4.   Invalidity based on Fraudulent Statements

Under 15 U.S.C. § 1120, any person who procures a registration "by a false statement or fraudulent declaration or representation" may be liable in a civil action.  Under 15 U.S.C. § 1064(3), a party may petition to cancel a registered trademark on the ground that the "registration was obtained fraudulently."

To establish a prima facie case of fraud in procuring a trademark registration, a party must show, by clear and convincing evidence, that:  (1) the challenged statement was a false representation regarding a material fact; (2) the registrant knew the representation was false (scienter); (3) the registrant intended to deceive the PTO; (4) the PTO reasonably relied on the misrepresentation; and (5) the party suffered damages proximately resulting from such reliance. *San Juan Products, Inc. v. San Juan Pools of Kansas, Inc.*, 849 F.2d 468, 473 (10th Cir. 1988) (citing 2 McCarthy § 31:21, at 602).

A party that seeks the cancellation of a trademark registration for fraudulent procurement "bears a heavy burden of proof."  *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). "[T]he very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence.  There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *Id*. (quoting *Smith Int'l, Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (T.T.A.B.1981)).  "[A]bsent the requisite intent to mislead the PTO, even

a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation." *Id*.

Where a party challenges a trademark registration, "the applicant's subjective belief" is at issue. *Stanfield v. Osborne Indus.*, 52 F.3d 867, 874 (10th Cir. 1995); *Bose*, 580 F.3d at 1244 ("[A] trademark is fraudulently obtained under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO.  Subjective intent to deceive, however difficult it may be to prove, is an indispensable element in the analysis.").  "Plaintiff's inability to prove the second element is dispositive of the claim."  *Id*.

As to the second element of fraudulent procurement, Pandora Inc. only provides evidence that Pandora LLC had knowledge of Pandora Inc.'s store. [8]   All discovery has been taken and Pandora Inc. can provide no evidence that raises a genuine issue of material fact that Pandora LLC had a subjective intent to deceive the PTO.  Summary judgment is granted in favor of Pandora LLC.[9]

### E.  Count X – Tortious Interference with an Advantageous Business Relationship by Defendant Pandora LLC

The parties have filed cross motions for summary judgment on Count X of Pandora Inc.'s Amended Complaint.  Pandora Inc. claims that Pandora LLC interfered with its business relationship with Google by (i) filing a complaint with Google to prevent it from using the

---

[8] Pandora Inc. argues that "the applicant and the attorneys prosecuting the trademark applications owe a duty of candor to the trademark office in connection with an application for registration of a trademark."  Pl.'s Mot. 7 n.7.  Pandora Inc. appears to conflate the law of fraud in the trademark and the patent contexts.  "The law of fraud in the trademark registration context has taken a very different direction than the law of fraud in the patent procurement context . . . .  One reason is that the patent application process has become a non-adversarial relationship where the applicant owes the PTO a high level of disclosure."  6 McCarthy on Trademarks § 31:62.  In fact, the cases cited by Pandora Inc. supports this proposition.  *See, e.g.*, *Yocum v. Covington*, 216 U.S.P.Q. 210, 216 (TTAB 1972) ("The standard of disclosure as to prior knowledge of facts and of possible other and earlier uses is much lower in a trademark than a patent proceeding. . . . a[] [trademark] applicant who has at least 'color of title' to the mark is not guilty of fraud in making the foregoing application recitals.").

[9] At the summary judgment stage, "[t]he moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, the burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case."  *Copelands' Enters., Inc. v. CNV, Inc.*, 945 F.2d 1563, 1565 (Fed. Cir. 1991) (internal quotations omitted).

Pandora marks in Google AdWords; and (ii) entering into license and/or franchise agreements with Defendants HB Retail and Carrie Venture.

The elements of a tortious interference cause of action are: (1) the existence of a business relationship; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional and unjustified breach of the relationship; and (4) damages to the plaintiff as a result of the breach. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). "A protected business relationship need not be evidenced by an enforceable contract." *Id.* However, "the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." *Id.*

1. Google Complaint

Pandora Inc. states that, as a result of a complaint Pandora LLC lodged with Google, Google terminated Pandora Inc.'s ability to advertise with Google using the "Pandora" name as an AdWord. Pandora Inc. had obtained AdWords for "Pandora Jewelry," "Pandora bracelets," "Pandora charms," and "Pandora beads." Thus, when a user entered any of these terms, Google would more prominently display Pandora Inc.'s website in its search results.

Pandora Inc. satisfies the first two elements of a cause of action for tortious interference. Pandora Inc.'s AdWords account constitutes a business relationship with Google,[10] and it is undisputed that Pandora LLC's Danish affiliate filed a complaint with Google to stop Pandora Inc. from using the "Pandora"-related AdWords.

The Parties disagree on whether Pandora LLC's actions constitute an intentional and unjustified breach of Pandora Inc.'s business relationship. Pandora Inc. provides evidence that

---

[10] Pandora LLC argues that Pandora Inc. fails to show that its Google AdWords account afforded Pandora Inc. "existing or prospective legal or contractual rights." Pandora LLC itself, however, cites to a case that indicates that an AdWords account with Google is a valid contract. *Jurin v. Google, Inc.*, No. 9-03065, 2010 U.S. Dist. Lexis 94020, at *11 (E.D. Cal. Sept. 9, 2010) (holding that plaintiff failed to alleged conduct constituting a breach of Adwords contract). Pandora Inc. therefore satisfies the first element of a cause of action for tortious interference.

Pandora LLC knew that Pandora Inc. used the "Pandora" name on the internet since 1999.

Pandora Inc. therefore contends that Pandora LLC's Google AdWords complaint was intentional

and unjustified.  Pandora LLC provides evidence that its Danish affiliate lodged the complaint

because, under the MPA, Pandora Inc. could not use Pandora LLC's trademarks in advertising,

marketing, promotional, or sales materials without prior written consent.  Because it did not

obtain such consent, Pandora LLC was justified in preventing Pandora Inc.'s advertising efforts.

Pandora LLC also points to evidence that Pandora LLC lodged the complaint to control the

integrity of its brand.

"Lawful competitive practices are privileged under Florida tortious interference law.  As

long as no improper means are employed, business activities taken to safeguard or promote one's

own financial interests are not actionable."  *Metzler v. Bear Auto. Serv. Equipment Co*., 19 F.

Supp. 2d 1345, 1364 (S.D. Fla. 1998).  A party's privilege to interfere "is qualified only where

malice is the *sole* basis for the interference. . . . In other words, the party must be interfering

*solely* out of spite, to do harm, or for some other bad motive."  *Ernie Harie Ford, Inc. v. Ford

Motor Co*., 260 F.3d 1285, 1294 n.9 (11th Cir. 2001) (emphasis in original).  "If [a defendant's]

conduct is not wrongful or illegal, it is justified."  *Metzler*, 19 F. Supp. 2d at 1364.

Pandora Inc. has failed to provide any evidence that Pandora LLC filed the complaint

"*solely* out of spite, to do harm, or for some other bad motive."  In its cross motion for summary

judgment, Pandora LLC provides evidence that its complaint to Google was justified and it did

not file a complaint solely out of malice.  Summary judgment is granted in favor of Pandora LLC

on this issue.

2.   License and/or Franchise Agreements

In Count X of Pandora Inc.'s Amended Complaint, Pandora Inc. states a claim for

tortious interference based solely on Pandora LLC's alleged interference with an *existing*

business relationship with Google.  In support of its claim, Pandora Inc. recites facts concerning

Pandora LLC's complaint with Google.  Am. Compl. ¶¶ 91-95.  In its Motion, Pandora Inc.

raises a new ground for tortious interference arising out of a *prospective* business relationship

with Defendants HB Retail and Carrie Venture.  With these new allegations, Pandora Inc. is not

merely asserting additional facts in support of its claim; rather, it is asserting an additional,

separate basis for recovery.  *Hulbert*, 439 F.3d at 1297.  Pandora Inc. cannot raise these new

claims at the summary judgment stage.  *Gilmour*, 382 F.3d at 1314-15.

### F.  Count XI – Florida Common Law Unfair Competition (Against Pandora LLC, Carrie Ventures, and HB Retail)

The parties have filed cross motions for summary judgment on Count XI of Pandora

Inc.'s Amended Complaint.  "The law of unfair competition is the umbrella for all statutory and

nonstatutory causes of action arising out of business conduct which is contrary to honest practice

in industrial or commercial matters."  *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co*., 494

F.2d 3, 14 (5th Cir. 1974).  "Courts endeavoring to map the contours of Florida's elastic unfair

competition cause of action have recognized that the precise elements of the claim are somewhat

elusive."  *Alphamed Pharms. Corp. v. Arriva Pharms., Inc*., 432 F. Supp. 2d 1319, 1353 (S.D.

Fla. 2006) (collecting cases) (internal quotations omitted).  "In the absence of elements that

apply uniformly to all claims of unfair competition, the Eleventh Circuit has endorsed an

approach which applies elements appropriate to the underlying acts of the unfair competition

claim on a case by case basis."  *Id*.  The analysis of Florida common law claims of trademark

infringement and unfair competition is the same as under the federal trademark infringement

claim.  *Custom Mfg. & Eng'g, Inc. v. Midway Servs*., Inc., 508 F.3d 641, 652-53 (11th Cir.

2007).  Thus, failure to establish an element of a federal trademark infringement claim will

extinguish such claims under Florida law as well.  *Id*. at 653.

1.   <u>Claims Against Pandora LLC</u>

In its Amended Complaint, Pandora Inc. alleges the following bases for its common law unfair competition claim against Pandora LLC:  (i) Pandora LLC filed a complaint with Google to fraudulently and deceptively attempt to divert Plaintiff's current or prospective customers, and the filing of the complaint is likely to deceive current and prospective customers; as a result of Pandora LLC's actions, Pandora Inc. suffered damages (Compl. ¶¶ 99-100); and (ii) by providing or preparing to provide retail jewelry store services using the Pandora marks in South Florida, Pandora LLC fraudulently and deceptively attempted to divert Pandora Inc.'s current and prospective customers; Pandora LLC's conduct is likely to deceive current and prospective customers and will harm Pandora Inc.'s goodwill and reputation (Compl ¶¶ 102-103).

In its Motion, Pandora Inc. asserts ten claims of common law unfair competition against Pandora LLC, most of which are new claims that Pandora Inc. did not allege as a basis for Count XI of its Amended Complaint.  In most cases, the claims are nothing more than a one- or two-sentence contentions followed by a statutory or case citation without further development. Pandora Inc. claims that:  (i) Pandora LLC breached its duty of good faith and fair dealing because it withheld material information when it sought a business relationship with Pandora Inc.; (ii) "reverse confusion type business activities condemns LLC's acts of flooding the market in 2008 with advertising and marketing which causes confusion over the affiliation and ownership of the 'Pandora' mark"; (iii) trademark infringement based on Pandora LLC's "'change' to using the identical signage as that used by Plaintiff for over a decade for its 'new' 2008 branding initiative on branded retail stores"; (iv) Pandora LLC obtained its registrations though "false and fraudulent statements made in reckless disregard of the truth (15 USC § 1119)" and procured its trademark registration "by false or fraudulent means (15 USC § 1120)"; (v) Pandora LLC used an "improperly obtained 'Pandora Jewelry' registration to attempt to

bolster the retail services application for registration"; (vi) Pandora LLC's filing of a complaint with Google consists of false and misleading representations in violation of 15 U.S.C. § 1125(a), unfair competitive activity in violation of 15 U.S.C. § 1120, and tortious interference with business relations; (vii) "[f]alsely representing in the Google complaint that Plaintiff was misusing LLC's brand in the context of fake or counterfeit products is an actionable literally false statement"; (viii) "making specific false or misleading representations the third parties about the nature and scope of [Pandora LLC's] actual ownership rights . . . to induce others, such as for example HB Retail and Carrie Ventures, to enter into license agreements"; (ix) "misrepresenting [Pandora, Inc.'s] rights and [Pandora Inc.'s] objections to [Pandora LLC's] assertion of ownership in the 'Pandora' mark in franchise disclosure documents" constitutes unfair business activity; and (x) Pandora Inc. "is also harmed by [Pandora LLC's] unjust enrichment."

Claims 1, 2, 3, 4, 5, 9, and 10 are new claims under Count XI of Pandora Inc.'s Amended Complaint that cannot be asserted here.  As Pandora Inc. itself notes, Florida's unfair competition law covers a wide range of statutory and non-statutory causes of action.  Each of these allegations assert additional, separate bases for recovery.  *See Hulbert*, 439 F.3d at 1296-97.  Pandora Inc. cannot raise these new claims at the summary judgment stage.  *See Gilmour*, 382 F.3d at 1314-15.  I will only address claims 6, 7, and 8, which Pandora Inc. alludes to in Count XI of its Amended Complaint.

### *Claim regarding Google Complaint*

In a one-sentence argument in its Motion, Pandora Inc. states that Pandora LLC's acts with respect to filing the complaint with Google consist of false and misleading representations in violation of 15 U.S.C. § 1125(a), unfair competitive activity in violation of 15 U.S.C. § 1120, and tortious interference with business relations.  Pl.'s Mot. 13.  In another sentence in its

Motion, Pandora Inc. claims that "[f]alsely representing in the Google compliant that Plaintiff was misusing LLC's brand in the context of fake or counterfeit products is an actionable literally false statement.  See 15 USC 1125(a)."  I will review each contention in turn. [11]

### Tortious Interference

I have already found that Pandora Inc. fails to make out a claim for tortious interference based on Pandora LLC's complaint to Google.  The same result follows here.  Summary judgment is granted in favor of Pandora LLC on Pandora Inc.'s unfair competition claim arising out of tortious interference.

### 15 U.S.C. § 1125(a)

Section 43(a) of the Lanham Act prohibits the use in interstate commerce of any "word, term, name, symbol or device, . . . or any false designation of origin, false or misleading discription of fact, or false or misleading representation of fact . . . which (A) is likely to cause confusion . . .  as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1).

Pandora Inc. fails to fully brief its argument that Pandora LLC violated Section 43(a) of the Lanham Act when it lodged its complaint with Google.  First, Pandora Inc. states:  "The submission of a false 'complaint' to entities such as Google to interfere with and undercut Plaintiff's ability to advertise under its own pre-existing name, is recognized false and misleading representations (15 USC § 1125(a))."  Pandora Inc. does not provide any case law

---

[11] In its Reply, Pandora Inc. states, "[t]he uncontroverted evidence also proves that LLC interfered with business relations when LLC used a registration obtained by false means (15 USC 1120), that was knowingly junior to Pandora's common law rights (Ex. II:1-12) and 15 USC 1057(c), to make a false representation to Google that Pandora was using the mark in connection with 'fakes' and 'counterfeits' in order to prevent Pandora from using its own name and marks for internet advertising."  Pl. Reply 5.  Because Pandora Inc. raises the applicability of 15 USC § 1057(c) in a reply brief, I will not address it.  *See* Local Rule 7.1.C.

citations or factual arguments to support this statement.  Pandora Inc. also claims that "[f]alsely representing in the Google complaint that Plaintiff was misusing LLC's brand in the context of fake or counterfeit products is an actionable literally false statement.  See 15 USC 1125(a)." Again, Pandora Inc. does not provide any case law citations or factual arguments to support this statement.  Moreover, Pandora Inc. fails to cite the subsections of 15 U.S.C. § 1125(a), which it believes apply to these arguments, or provide clarification on exactly which, if any, of Pandora LLC's statements to Google violate the Lanham Act.  Because I cannot make out from the briefs what Pandora Inc.'s specific arguments are regarding this claim, it is not proper for summary judgment.

<u>15 U.S.C. § 1120</u>

Pandora Inc. cites 15 U.S.C. § 1120 as another statutory basis for its claim regarding the "submission of a false 'complaint' to entities such as Google."  This statute provides for civil liability for a false or fraudulent registration in the PTO, and appears to be inapplicable to Pandora Inc.'s claim that Pandora LLC made a "false complaint" to Google.  Because Pandora Inc. does not otherwise explain how this statute applies to the Google complaint, it is not proper for summary judgment.  To the extent Pandora Inc. was attempting to characterize its claim that Pandora LLC made false statements to the PTO as a common law claim, such a claim is not present in Pandora Inc.'s Amended Complaint and Pandora Inc. cannot now raise it at the summary judgment stage.

***Claim regarding Retail Defendants***

Pandora Inc. claims that Pandora LLC made "specific false or misleading representations to third parties about the nature and scope of [Pandora LLC's] actual ownership rights, while withholding its knowledge of [Pandora Inc.'s] pre-existing common law rights, in order to induce others, such as for example HB Retail and Carrie Ventures, to enter into license

30

agreements in [Pandora Inc.'s] geographic area of superior rights."  This appears to be essentially a contributory infringement claim.

"[T]here can be no contributory infringement without a direct infringement."  *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1298 n.11 (11th Cir. 2008).  To establish a prima facie case of trademark infringement under § 43(a), a plaintiff must show "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two."  *Tana*, 611 F.3d at 773.  As explained above, genuine issues of material fact exist as to the whether a likelihood of confusion exists. Summary judgment is therefore not proper as to this claim.

> 2.   Claims Against HB Retail and Carrie Ventures

In its Motion, Pandora Inc. seeks summary judgment and a permanent injunction under Count XI against Carrie Ventures and HB Retail for unfair competition based on Florida common law trademark infringement.  As noted above, "[t]he elements required to prevail on a claim of common law trade name and service mark infringement are the same as those required to prevail under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) or under a claim for common law unfair competition."  *Am. United Life Ins. Co.*, 731 F. Supp. at 486.  Because summary judgment is denied as to Counts VI and VII the same result follows here.  Similarly, I cannot issue a permanent injunction for the same reasons stated above.

**G.  Pandora LLC's Request for Judgment as a Matter of Law on its Counterclaim**

Pandora LLC states that it is entitled to judgment as a matter of law on its counterclaim for a declaratory judgment because it has established that its affirmative defenses bar Pandora Inc.'s trademark infringement claims under federal and common law.  Def.'s Mot. 17.  Because I have not granted summary judgment in favor of Pandora LLC with respect to the application of

its affirmative defenses, judgment for Pandora LLC is not warranted on those grounds.

Additionally, Pandora LLC Counterclaim claims that its use of the Pandora mark is not likely to cause confusion or mistake.  As noted above, this is a disputed issue of material fact that a jury must decide.  Summary judgment on Pandora LLC's counterclaim is not appropriate.

## H.  Pandora LLC's Claim That Pandora Inc. Is not Entitled to Profits

Pandora LLC states that there is no evidence that it acted willfully; therefore, Pandora Inc. is not entitled to Pandora LLC's profits.  A plaintiff who proves a violation of Section 43(a) of the Lanham Act may be entitled to "(1) defendant's profits, (2) damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a).  "[A]n award of profits is proper when a defendant's actions are willful."  *Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-22046, 2009 U.S. Dist. LEXIS 116770, at *32 (S.D. Fla. Apr. 29, 2009) (citing *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 585 (5th Cir. 1982)).  A willful violation of a trademark occurs when the infringer "knowingly and deliberately cash[es] in upon the good will of [the trademark owner]."  *Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 Fed. Appx. 899, 902-03 (11th Cir. 2007) (quoting *Burger King v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988)).  Pandora LLC states that there are no genuine issues of material fact with respect to its intent to "trade on or 'cash in'" on Pandora Inc.'s goodwill.  However, Pandora Inc. points to facts regarding Pandora LLC's actions in selecting Pandora Inc. as an authorized retailer and later establishing retail stores, which create genuine issues of material fact regarding whether Pandora LLC's actions were willful.  Because the question of whether Pandora LLC acted willfully is a genuine issue of material fact for the jury, summary judgment is denied.

## I.  Pandora Inc.'s Request for Permanent Injunction

The parties have filed cross motions for summary judgment on whether I should enter a permanent injunction at this stage of litigation.  In a nutshell, Pandora Inc. seeks a permanent

injunction because it has suffered irreparable injury to its goodwill as a result of customer confusion, which cannot be compensated with a monetary award.  "A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Klay*, 376 F.3d at 1097.  "The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits instead of a likelihood of success." *Id*.   I have not granted summary judgment on any of the trademark infringement claims.  Thus, Pandora Inc. has not actually succeeded on the merits.  Summary judgment is not proper.

Defendants claim that equitable relief should not be granted because Pandora Inc. comes to court with unclean hands.  As noted above, "[t]o show that a trademark plaintiff's conduct is inequitable, defendant must show that plaintiff used the trademark to deceive consumers." *Japan Telecom, Inc.*, 287 F.3d at 870.

To show that Pandora Inc. used the Pandora marks to deceive customers, Defendants recite a number of disputed facts regarding an alleged "emerging scheme of [Pandora Inc.] to hold the Pandora Brand ransom," Pandora Inc.'s wrongful use of Pandora LLC's marks to "bait" customers, and Pandora Inc.'s continued sale of Pandora LLC jewelry.  Pandora Inc. disputes these facts.  Because there is a genuine issue of material fact regarding whether the unclean hands defense is applicable, summary judgment is not appropriate.

## IV.  CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that:

1.      Plaintiff's Motion for Partial Summary Judgment Against Defendant Pandora

Jewelry, LLC (ECF No. 93) is **DENIED**.

2.      Plaintiff's Motion for Partial Summary Judgment Against Defendants Carrie

Ventures, LLC and HB Retail Inc. (ECF No. 101) is **GRANTED in part and DENIED in part**,

as follows:

a.   Summary judgment is **DENIED** as to the defenses of estoppel, laches,

acquiescence, waiver, and unclean hands.  These defenses remain.

b.   Summary judgment is **GRANTED** as to the defense of licensee estoppel. This

affirmative defense is **STRICKEN**.

c.   Summary judgment is **DENIED** as to Counts II, III, VI, VII, and XI.  These

counts remain.

3.      Defendants' Motion for Summary Judgment Against Plaintiff Pandora Jewelers

1995, Inc. (ECF No. 106) is **GRANTED in part and DENIED in part**, as follows:

a.   Summary judgment is **DENIED** as to the affirmative defense of laches and

the merger doctrine. These defenses remain.

b.    Summary judgment is **GRANTED** *in favor of Pandora Inc.* as to the

affirmative defense of licensee estoppel.  This affirmative defense is

**STRICKEN**.

c.   Summary judgment is **DENIED** as to claims of invalidity under 15 U.S.C. §

1052(d) and invalidity based on false oaths in Count IX of Amended

Complaint.  These claims remain.

d.   Summary judgment is **GRANTED** as to the claim of invalidity based on

fraudulent procurement of a trademark registration under Count IX of the

Amended Complaint.  This claim is dismissed.

e.   Summary judgment is **GRANTED** as to Count X.  This count is dismissed.

    f.    Summary judgment is **GRANTED** as to the common law unfair competition claim based on tortious interference under Count XI.  This claim is dismissed.

    g.    Summary judgment is **DENIED** as to the common law unfair competition claims based on 15 U.S.C. § 1125(a), 15 U.S.C. § 1120, and contributory infringement under Count XI.  These claims remain.

    h.    Summary judgment is **DENIED** as to Pandora LLC's Counterclaim for declaratory judgment.  The counterclaim remains.

    i.    Summary judgment is **DENIED** as to the issue of whether Pandora Inc. is entitled to a disgorgement of profits.  This issue remains.

    j.    Summary judgment is **DENIED** as to Defendants' claim that the unclean hands doctrine bars equitable relief in favor of Pandora Inc.  This claim remains.

**DONE and ORDERED** in chambers, at Miami, Florida, this 2nd day of June 2011.


_Marcia G. Cooke_
_____
MARCIA G. COOKE
United States District Judge


Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*