**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 09-61490-Civ-COOKE/TURNOFF**

PANDORA JEWELERS 1995, INC.,

      Plaintiff

vs.

PANDORA JEWELRY, LLC, *et al.*,

      Defendants.

_____/

## OMNIBUS ORDER ON MOTIONS IN LIMINE

    THIS MATTER is before me on the parties' Joint Summary of Motions in Limine (ECF No. 173), Plaintiff's Motions to Exclude Experts (ECF Nos. 96, 98), and Defendants' Motion to Exclude Plaintiff's Experts (ECF Nos. 104, 105). I have reviewed the arguments, the record, and the relevant legal authorities. I will review each Motion in Limine in turn.[1]

### I.  LEGAL STANDARDS

    "The purpose of an in *limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). Any evidence, tending to make the existence of any fact of consequence more probable or less probable, is relevant and admissible, except as the Federal Rules of Evidence otherwise provide. Fed. R. Evid. 401 & 402. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403.

---

[1] The facts of this case are set forth in my March 18, 2010 Order denying Motion for Preliminary Injunction. (ECF No. 30).

Trial courts are the gatekeepers to the admission of all expert testimony and must ensure that any and all expert testimony or evidence admitted is not only relevant, but reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). In order to determine the admissibility of expert testimony, a district court must consider whether: (1) the expert is qualified to testify competently as to the subject matter he intends to address; (2) the method employed by the expert is sufficiently reliable; and (3) the testimony assists the trier of fact to comprehend the evidence through the application of the witness's expertise. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois U.K. Ltd.*, 326 F. 3d 1333, 1340-41 (11th Cir. 2003). "While there is inevitably some overlap among the basic requirements-qualification, reliability, and helpfulness-they remain distinct concepts and the courts must take care not to conflate them." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

## II. ANALYSIS

### A. Motions in Limine to Exclude Expert Testimony

#### 1. Plaintiff's Motion to Exclude Expert Testimony of Ravi Dhar

Plaintiff moves to exclude Dr. Ravi Dhar's expected testimony regarding (i) Pandora LLC's intent; and (ii) likelihood of customer confusion. Plaintiff challenges Dr. Dhar's testimony based on his qualifications or competency, reliability, and helpfulness.

Plaintiff argues that Dr. Dhar's expected testimony regarding Pandora LLC's intent or motive in opening "concept stores" is speculative and unreliable, it would not assist the trier of fact, and Dr. Dhar is not qualified to testify as to another's intent. Mr. Dhar specifically states in his expert report that Pandora LLC's "intent to open stores with the Pandora LLC name has nothing to do with deriving any benefit from the so-called reputation of the plaintiff in the South Florida market." Dhar Rep. ¶ 29. "The question of intent or motives is a classic jury question and not one for experts." *In re Trasylol Prods. Liab. Litig.*, No. 08-01928, 2010 WL 4259332, at *8 (S.D. Fla.

Oct. 21, 2010).  Dr. Dhar did not conduct interviews of Defendants to ascertain their intent.  Dr. Dhar does not have any particular expertise in determining intent.  Thus, Dr. Dhar's expected testimony about Defendants' intent "has no bases in any relevant body of knowledge or expertise and describes lay matters which the jury is capable of understanding without the expert's help." *In re Trasylol Prods. Liab. Litig.*, 2010 WL 4259332, at *8.

However, Dr. Dhar may testify as to areas of his expertise, including consumer marketing and brand strategy, which may be probative of Defendants' intent. *Cf. United States v Johnston*, 322 Fed. Appx. 660, 667 (11th Cir. 2009); *United States v. Loess*, 251 F.3d 941, 949 (11th Cir. 2001).  Thus, although Dr. Dhar may not testify as to his belief or understanding of Defendants' intent or motives, as described in paragraph 29 of Dr. Dhar's Report, he may testify as to Pandora LLC's brand strategy, the value, strength and distinctiveness of the marks,[2] as well as general marketing reasons why Pandora LLC would open stand-alone stores.  The latter testimony is helpful for the jury to better understand the facts of this case.

Plaintiff argues that Dr. Dhar is not qualified to testify to the channels of trade in the jewelry business.  In particular, Plaintiff challenges Dr. Dhar's opinion that "the introduction of such stores does not change the nature of competition or confusion between Pandora LLC and Pandora Jewelers 1995."  Dhar Rep. ¶ 30.  Plaintiff states that Dr. Dhar has no background in the jewelry industry and he has not conducted independent studies on these issues.  Dr. Dhar has experience in marketing, branding, and consumer decision-making, and has acted as a consultant for major businesses, including many Fortune 500 companies.  An expert's qualification may be based on "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Plaintiff does not submit

---

[2] Plaintiff is correct that, in a trademark infringement action, it is the plaintiff who must prove the strength and distinctiveness of its mark. Plaintiff ignores that Pandora LLC has asserted several affirmative defenses and a counterclaim for declaratory judgment in this case.  In its Counterclaim, Pandora LLC claims that the use of its mark is not likely to cause confusion.  Whether consumers can distinguish between the marks is relevant to Pandora LLC's affirmative defenses and counterclaim.

any evidence or argument that the jewelry industry is somehow unique and consumers of jewelry perceive jewelry brands differently than those of other goods.  I am persuaded that Dr. Dhar has sufficient knowledge, experience, and education based on his expertise in marketing and branding, and on his review of the facts of this case, to provide testimony that the introduction of concept stores does not change the nature of competition or cause confusion between Pandora LLC and Plaintiff.

Plaintiff also argues that Dr. Dhar's expected testimony that customer confusion is "unlikely" constitutes legal argument.  Dr. Dhar's conclusions regarding customer confusion are based on his expertise in brand recognition and consumer choice.  Dhar Rep. ¶¶ 33-34.  An expert witness may testify as to the likelihood of customer confusion, even when the expert does not support his opinions with direct evidence from consumers.  *See Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*, No. 08-2376, 2010 WL 3075318, at **4-5 (N.D. Ga. Aug. 4, 2010). Although a jury may decide not give such evidence great weight, it is admissible.

Finally, Plaintiff argues that, even if Dr. Dhar's testimony is admissible, his opinions should be excluded because their probative value is substantially outweighed by the danger of unfair prejudice.  *See* Fed. R. Evid. 403.  Plaintiffs argue that the jury will "assign talismanic significance" to Dr. Dahr's testimony, which is unduly prejudicial to Plaintiff.  Plaintiff is free to attack any weaknesses in Dr. Dahr's testimony or methodology through cross-examination.   I do not find that his testimony will be unduly prejudicial.

2.   Defendants' Motion to Exclude Expert Testimony of Kristopher Swanson

Defendants argue that the expert testimony of Plaintiff's damages expert Kristopher Swanson should be excluded because it contains flawed methodology.  Defendants do not challenge Mr. Swanson's qualifications or competency; Defendants challenge the expected testimony based on reliability, and helpfulness.

In particular, Defendants identify the following flaws in Mr. Swanson's methodology for calculating damages: (i) inclusion of all of Pandora LLC's profits instead of identifying those portions, if any, attributable to the alleged trademark infringement; (ii) inclusion of profit scenarios that include sales across the United States; (iii) inclusion of profits from total revenues; and (iv) inclusion of profits made prior to May 2009, when Plaintiff was one of Pandora LLC's authorized retailers. Defendants also disagree with Mr. Swanson's methodology in calculating damages based on corrective advertising.

Mr. Swanson provided damages calculations based on his review of Pandora LLC's sales and expenses information, as well as documents filed that the parties have filed in this case. Relying on this material, Mr. Swanson calculated damages in six "scenario constructions," which account for any number of possible outcomes in this litigation, depending on whether the jury determines the geographical scope of Plaintiff's trademark use was national, only the state of Florida, or only South Florida; and whether infringement began in 2003, 2007, 2008, or 2009. For the scenarios that take into account profits from 2003-2009, Mr. Swanson reduced the calculation of Defendants' profits by the pro-rata share attributable to Pandora LLC's net sales to Plaintiff. Swanson Rep. 12-13.

At the outset, Defendants appear to argue that Mr. Swanson's expected testimony is flawed because he assumes liability for trademark infringement and does not provide an opinion on the geographical scope of the Plaintiff's alleged common law trademark. An expert witness, however, may assume liability for purposes of calculating damages, which is what Mr. Swanson has done. *See, e.g.*, *Sancom v. Quest Commc'ns Corp.*, 683 F. Supp. 2d 1043, 1068 (D.S.D. 2010) ("it is well-settled that a damages expert . . . can testify as to damages while assuming the underlying liability."); *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 660 (N.D. Ill. 2006) ("A damages model would, of course, be necessarily consistent with liability, or necessarily assume liability.").

5

Moreover, Mr. Swanson cannot render an opinion regarding the geographical scope of Plaintiff's trademark use, as that is an issue for the jury to resolve. *Cf. Platypus Wear Inc. v. Clarke Modet & Co., Inc.*, No. 06-20976, 2008 WL 4533914, at *6 (S.D. Fla. Oct. 7, 2008) ("Ultimately, every expert witness who calculates damages sustained from a breach of a given contract must assume the contract's enforceability under the law. An accountant or forensic expert would not be expected or allowed to render an underlying legal opinion on that issue.").

Defendants' second argument, that Mr. Swanson failed to sufficiently apportion for profits attributable to the alleged infringement, fails as a matter of law. According to 15 U.S.C. § 1117, "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." "The Lanham Act thus squarely places the burden of proof on the infringer to establish any deductions from its gross sales in order to arrive at the correct profit figure. Moreover, under the Lanham Act and the common law, it is the infringer's burden to prove any proportion of its total profits which may not have been due to the infringement." *Nutrivida, Inc. v. Immuno Vital, Inc.*, 46 F. Supp. 2d 1310, 1315 (S.D. Fla. 1998). This system may result in "a windfall to the trademark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.,* 316 U.S. 203, 207 (1942). "When 'the infringer fails to carry its statutory burden to offer evidence of deductions, the plaintiff's entitlement to profits under the Lanham Act is equal to the infringer's gross sales.'" *FSC Franchise Co., LLC v. Express Corporate Apparel, LLC*, 2011 WL 1226002, at *7 (M.D. Fla. Feb. 28, 2011) (quoting *WMS Gaming, Inc. v. WPC Prods. Ltd.,* 542 F.3d 601, 609 (7th Cir. 2008)). In performing his calculations, Mr. Swanson used sales figures Defendants produced in discovery. Mr. Swanson used net revenue and/or deducted Defendants' cost of sales and operating expenses. Although he does not provide any methodology to apportion profits

attributable to the alleged infringement, he does not have to.  It is Defendants' burden to do so.

Similarly, Defendants' arguments regarding Mr. Swanson's calculations of damages based on alternative scenarios, some of which take into account Defendants' national revenue, do not hold water.[3]  Plaintiff has alleged that the geographical scope of its trademark use was within the South Florida area and nationally, through internet sales.  Because a jury will determine the geographical scope of Plaintiff's trademark use, based on the evidence proffered at trial, Mr. Swanson has provided alternate scenarios based on every possible outcome at trial.  As discussed above, Mr. Swanson employs reliable methodology to calculate damages in each of the possible scenarios.  Such calculations will be helpful to the trier of fact.

Defendants also challenge Mr. Swanson's calculations of corrective advertising.  A plaintiff may recover damages for corrective advertising expenses.  *See Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1241 (11th Cir. 2008).  To estimate Plaintiff's expected costs for corrective advertising, Mr. Swanson "accumulated Defendants' declared marketing support expenditures and calculated the pro rata share for the State of Florida and for southeast Florida."  Swanson Rep. 16. To establish reasonable damages for corrective damages, the Eleventh Circuit has accepted testimony from a plaintiff's corporate officer regarding estimated costs for *concrete and specified forms of corrective advertising*, such as website ads, ads in trade publications, and attending industry trade shows.  *Aronowitz*, 513 F.3d at 1241; *see also I'm A Little Teacup Corp. v. Quality Pet Prods., LLC*, No. 08-60446, 2009 WL 837658, at *1 (S.D. Fla. Mar. 27, 2009) (accepting testimony of plaintiff's corporate officer, who estimated what types of corrective advertising would be necessary); *Punch Clock, Inc. v. Smart Software Dev.*, 553 F. Supp. 2d 1353, 1358-59 (S.D. Fla.

---

[3] Defendants also argue that Mr. Swanson does not explain why Plaintiff is entitled to disgorgement of profits.  Why Plaintiff is entitled to profits depends on liability determinations, not to be made by an expert. Therefore, his failure to explain why Plaintiff is entitled to disgorgement of profits is not a proper ground for excluding Mr. Swanson's testimony.

2008) (finding seven years for corrective advertising through Google AdWords would be appropriate measure of corrective advertising damages).  Mr. Swanson's expert testimony would not provide any calculation of concrete, specific forms of corrective advertising necessary to correct alleged customer confusion.  As such, Mr. Swanson's methodology will not assist the trier of fact in determining appropriate damages. [4]

Mr. Swanson also calculates "damages for tortious interference" based on Pandora LLC's affiliate company's complaint with Google.  Swanson Rep. 16.  I have dismissed Plaintiff's tortious interference claims, so a calculation of damages on this issue is unnecessary

Finally, Defendants argue that Mr. Swanson's opinion is highly prejudicial and therefore inadmissible under Rule 403.  I disagree.  Mr. Swanson has provided calculations based on Defendants' evidence.  Defendant is free to cross-examine any weaknesses in Mr. Swanson's data or assumptions, and offer its own expert testimony regarding apportionment and deductions, as required under the Lanham Act.  *See, e.g.*, *Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK, Ltd*., 326 F.3d 1333, 1345-46 (11th Cir. 2003) (arguments regarding deficiencies in making calculations, i.e., using wrong numbers, should be addressed through cross-examination because they "impugn the accuracy of [the] results, not the general scientific validity of [the] methods").

---

[4] I acknowledge that the Tenth Circuit has permitted a similar calculation of corrective advertising damages. *See Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co*., 561 F2d 1365, 1374-75 (10th Cir. 1977) (adopting, in trademark infringement action, the Federal Trade Commission's practice of requiring businesses who engage in misleading advertising to spend 25% of their advertising budget on corrective advertising).  Mr. Swanson calculated Defendants' pro-rata advertising costs, but did not calculate 25% of that amount.  In any case, Plaintiff offers no case law in the Eleventh Circuit permitting such a measure of corrective advertising damages, nor have I found any.

3.   Plaintiff's Motion to Exclude Expert Testimony of Mary Woodford

Plaintiff moves to exclude Defendants' rebuttal expert, economist Mary Woodford, on the grounds that (i) her opinions concerning apportionment of sales and profits are speculative and unreliable; and (ii) her criticisms of Mr. Swanson's report on the subjects of national sales, disgorgement, corrective advertising, and the Google complaint consist of legal arguments.[5] Defendants do not challenge Ms. Woodford's qualifications or competency; Defendants challenge her expected testimony based on reliability and helpfulness.

With respect to Ms. Woodford's opinions concerning the apportionment of sales as profits, Plaintiff challenges Ms. Woodford's opinion that Mr. Swanson failed to account for four factors that contributed to Plaintiff's success:  (a) Pandora LLC's patented charm bracelets; (b) Pandora LLC's business and managerial acumen; (c) Pandora LLC's entry into and buildup of a niche market; and (d) demonstrated scale of Pandora LLC's success contrasted with that of Plaintiff. Plaintiff points out that Ms. Woodford is unable to provide what percentage of Defendants' profits are attributable to each of these factors.  A rebuttal expert can testify as to the flaws that she believed are inherent in another expert's report that implicitly assumes or ignores certain facts.  *See KW Plastics v. U.S. Can Co.*, 199 F.R.D. 687, 692 (M.D. Ala. 2000).  Thus, a rebuttal expert may "testify that, while [the expert's] report implicitly assumes (or erroneously fails to consider) facts *X, Y,* and *Z,* [the expert's] analysis is seriously flawed if the jury does not accept *X, Y,* and *Z* as true. This is a well-accepted way to criticize damages estimates."  *Id*.  I find that Ms. Woodford's opinions concerning apportionment is sufficiently grounded on her expertise, her analysis of the facts of the case, and would be helpful for the jury.  *See 1st Source Bank v. First Resource Fed. Credit Union*, 167 F.R.D. 61, 65 (N.D. Ind. 1996) (finding rebuttal expert's opinion that defendants'

---

[5] I will not address Ms. Woodford's discussion of Mr. Swanson's analysis regarding corrective advertising and tortious interference because Mr. Swanson cannot testify as to either of these subjects. Thus, no rebuttal on these points is necessary.

profits were attributable to many listed factors was not unfounded or speculative, noting that "as a rebuttal witness, [an expert] may criticize [plaintiff's] damage theories and calculations without offering alternatives."); *see also* Woodford Rep. 13-15; 24-26.

The principal case on which Plaintiff relies, is not applicable to the present facts.  In *Hi Ltd. Partnership v. Winghouse of Florida, Inc*., the plaintiff challenged an expert's opinion that "no more than 10% of the [defendants'] profits . . . are attributable to the [trade dress], as opposed to other non-trade dress factors (e.g., price of menu items, location of restaurant, full bar)."  No. 03-116, 2004 WL 5486964, at *1 (M.D. Fla. Oct. 6, 2004).  The court found that the expert could not provide a scientifically or economically sound methodology to arrive at the 0-10% figure.  *Id*. at *4.  The court therefore found that the opinion was highly speculative and unreliable.  *Id*.  In contrast, Ms. Woodford does not purport to parse out the percentage attributable to each factor she identifies.  She merely provides other factors that Mr. Swanson should have considered in his report, based on her economics expertise.  Highlighting such factors will be helpful for the jury to weigh the evidence presented at trial.

Plaintiff identifies a number of Ms. Woodford's statements, which Plaintiff contends are purely legal arguments that should be made by counsel, rather than an expert witness.  Of the five statements the Plaintiff identifies as legal argument, I find that all but one are admissible.  *See* Pl.'s Mot. 7.  Ms. Woodford's Report states:  "According to the Court's decision regarding the Motion for Preliminary Injunction, Pandora 1995 appears never to have registered the Pandora 1995 marks on the federal level.  In such 'common law' instances, infringement liability and presumably damages cannot extend beyond the geographical territory served by the Plaintiff, which was designated as 'South Florida' in the Plaintiff's Motion for Preliminary Injunction and in the Order Denying Plaintiff's Motion for Preliminary Injunction."  Woodford Rep. 15.  "An expert may testify as to his opinion on an ultimate issue of fact. . . . An expert may not, however, merely tell the jury

what result to reach. . . . . A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law."  *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).  In this statement, Ms. Woodford makes a legal conclusion regarding the implications of failing to secure a federal trademark and the law governing the means to ascertain the geographical scope of Plaintiff's mark.  Ms. Woodford cannot testify as to the opinions stated in paragraph 29 of her report.  As to opinions stated in paragraph 30 of the report, Ms. Woodford may not comment on Plaintiff's failure to register its mark ("Even if Pandora 1995 had registered its mark (which it did not), and the national level was appropriate . . ..), but she may testify as to the mathematical or economic reasons why the use of national sales and profits figures are incorrect.

      4.  <u>Defendants' Motion to Exclude Expert Testimony of Cecilia Gardner</u>

Defendants challenge Plaintiff's expert, Cecilia Gardner, on grounds of qualifications or competency, reliability, and relevance.

First, Defendants state that Ms. Gardner does not have the requisite knowledge, skill, experience, training, or education to qualify as an expert on distribution channels for branded and non-branded jewelry.  Ms. Gardner is a lawyer who specializes in legal and regulatory compliance. Ms. Gardner is the president, CEO, and General Counsel of the Jewelers Vigilance Committee ("JVC"), "whose mission is to foster integrity in the precious metal, gem, and jewelry business." As part of her work, she "visit[s] the location of [] business[s] and examine[s] the business models and distribution chains of businesses in all sectors of the jewelry trade."  Gardner Rep. ¶ 4.  She states, "I therefore have visited at least 75-100 different jewelry businesses in every sector and category in the trade, all over the United States and abroad."  Further, she states, "I frequently work with companies to ensure that they are aware of their legal obligations, and that these are fully integrated into their business model.  This has provided me with experience with the business practices and distribution channels of all sectors of the trade, from producers, wholesalers,

distributors to retailers, and ultimately the end user, the consumer."  Gardner Rep. ¶ 5.

"The qualification standard for expert testimony is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility."  *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (internal quotations omitted).  In view of this standard, and based on my review of Ms. Gardner's relevant knowledge and experience, I find that Ms. Garner is qualified.

Second, Defendants challenge the reliability of Ms. Gardner's opinions.  Essentially, Defendants disagree with Ms. Gardner's conclusion that Pandora LLC entered into an "entirely different channel of distribution" and argue that she ignored material facts, including that Pandora LLC continues to sell its jewelry line wholesale to authorized retailers, despite having also opened stand-alone concept stores, and Pandora LLC does not own the stand-alone stores; rather, the stores are franchises.

"Relevant testimony from a qualified expert is only admissible if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation."  *Vision I Homeowners Ass'n, Inc.*, 674 F. Supp. 2d at 1325.  To prepare her report, Ms. Gardner considered the documents that the parties filed in this case and documents provided in discovery.  Ms. Gardner testified in deposition that the facts Defendants claim she ignored would not have changed her analysis.  "Whether a logical basis for admitting the testimony has been established is within the court's discretion, and the weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility."  *Id.*  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596.  Defendants' challenges to Ms. Gardner's conclusions and the facts she relied on, go to their weight rather than their admissibility.  I find that Ms. Gardner's testimony is sufficiently reliable and

helpful to the trier of fact.

Finally, Defendants argue that Ms. Gardner's opinion is highly prejudicial and therefore inadmissible under Rule 403. I disagree. I do not find that Ms. Gardner's opinion will, as Defendants contend, "cause confusion in the view of the established facts concerning Defendant Pandora's business model of licensing or franchising its Concept Stores and will mislead and confuse the jury." As I noted above, Defendants may attack any perceived weaknesses in Ms. Gardner's report through vigorous cross-examination to clarify any issues for the jury's consideration.

**B.  Parties' Motions in Limine on Relevance, Unfair Prejudice or Confusion Objections**

The majority of the motions in limine involve relevance objections and unfair prejudice or confusion of the issues objections, under Federal Rules of Civil Procedure 401 and 403. I will consider each in turn below.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that:

1.      Plaintiff's Motion to Exclude Expert Testimony of Ravi Dhar (ECF No. 98) is **GRANTED in part and DENIED in part**. Dr. Dhar may not testify as to Pandora LLC's intent or motives, but may testify as to all other areas of his expertise, as disclosed in his report.

2.      Defendants' Motion to Exclude Expert Testimony of Kristopher Swanson (ECF No. 104) is **GRANTED in part and DENIED in part**. Mr. Swanson may not testify as to damages for corrective advertising or tortious interference, but may testify as to all other areas of his expertise, as disclosed in his report.

3.      Plaintiff's Motion to Exclude Expert Testimony of Mary Woodford (ECF No. 96) is **GRANTED in part and DENIED in part**. Ms. Woodford may not testify as to the implications of failing to secure a federal trademark and the law governing the means to ascertain the geographical

scope of Plaintiff's mark, but may testify as to all other areas of her expertise, as disclosed in her report.

4.      Defendants' Motion to Exclude Expert Testimony of Cecilia Gardner (ECF No. 105) is **DENIED**.

5.      The Parties' Joint Summary of Motions in Limine (ECF No. 173) is **GRANTED in part and DENIED in part**, as follows:

a.      The Plaintiff's Motion in Limine No. 3 to exclude evidence of Defendants' use of the Pandora Mark outside of the United States is **DENIED**.  To obtain an award for profits, Plaintiff must establish that Defendants willfully, knowingly, and deliberately infringed upon another's trademark in cashing in upon the goodwill of the trademark owner.  *See Burger King v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988).  Additionally, the alleged infringer' intent to misappropriate the trademark owner's goodwill is an element for proving a likelihood of confusion.  *Tana v. Dantanna's*, 611 F.3d 767, 774-75 (11th Cir. 2010).  Defendants do not seek to introduce evidence of prior foreign use to establish seniority—which they may not do under trademark laws—but to establish Defendants' good faith adoption and use of the "Pandora" marks in the United States. This a relevant issue in this case.  To prevent any potential jury confusion or any undue prejudice, Plaintiff may present to the Court a jury instruction that use outside the United States does not establish seniority.

b.      The Plaintiff's Motion in Limine No. 4 to Exclude References to Defendants' Contention that their Mark is "famous" is **DENIED**.  Defendants do not contend that their marks are "famous," for purposes of obtaining remedies set out in 15 U.S.C. § 1125(c).  Defendants state that they will not propose a jury instruction regarding "fame," pursuant to 15 U.S.C. § 1125(c), as that statute refers to dilution cases, rather than trademark infringement cases.  It appears that Plaintiff's concerns regarding potential references that Pandora LLC's mark is "famous" are

unfounded.

      c.      The Plaintiff's Motion in Limine No. 5 to exclude references to Defendants' trademark registrations is **DENIED**. Any registration issued under the Lanham Act or registered on the principal register "shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein." 15 U.S.C. § 1115. I have not otherwise held that Pandora LLC's trademark registrations are invalid. Pandora LLC's federal trademarks are therefore relevant to this case. Any potential jury confusion may be cured through applicable jury instructions.

      d.      The Plaintiff's Motion in Limine No. 6 to exclude references to "The Transition Companies" is **GRANTED in part and DENIED in part**. To the extent Plaintiff seeks to exclude certain documents, Plaintiff fails to identify which specific documents are at issue. Without reviewing the documents at issue, I cannot determine whether they are relevant, or whether they are unduly prejudicial. I will consider Plaintiff's objections to the admission of specific evidence regarding "The Transition Companies" on a case-by-case basis. Plaintiff also seeks to preclude Defendants from introducing evidence on the fact that the Wasson family considered selling their business to Pandora LLC. To the extent such facts occurred in connection with settlement negotiations, they cannot be admitted to prove liability for, invalidity of, or amount of a claim. As the parties have not briefed the issue of whether the offer of sale was a settlement offer, I cannot make a determination on this dispute. Plaintiff may raise any objections on a case-by-case basis. Finally, Plaintiff seeks to preclude Defendants from characterizing Plaintiff's offer to sell its common law trademarks "as an attempt at extortion." I agree that such characterization is unduly prejudicial.

e.      The Plaintiff's Motion in Limine No. 7 to exclude evidence relating to stricken

defenses and counterclaims is **DENIED**.  Defendants may not introduce evidence that is relevant

*solely* to prove a stricken affirmative defense (I have not stricken Defendants' counterclaim).

However, I cannot enter a blanket order without review of the particular evidence at issue.  I will

consider Plaintiff's objections to the admission of specific evidence on a case-by-case basis.

f.      The Defendants' Motion in Limine No. 1 to prevent Plaintiff from using or

characterizing an email as a "profanity instruction" is **GRANTED in part and DENIED in part**.

According to Defendants, Plaintiff seek to introduce into evidence a particular internal Pandora

LLC email where a Pandora LLC representative states, in reference to a Pandora Inc. representative,

"f--- him."  Defendants state that Plaintiff has described this email as the "Profanity Instruction."

Defendants argue that this description may cause juror confusion, as it could be misunderstood as a

jury instruction.  Plaintiff has graciously agreed to refrain from using this phrase at trial.  The

parties are directed to reach an agreement as to a better description for this email.  Defendants also

argue that this email "will mislead the jury into believing that Mr. Lund is profane and

unprofessional thereby unduly prejudicing Defendants regarding unrelated issues."  The contents of

this email are relevant to refute Defendants' unclean hands defense.  I disagree that the use of one

profane word in one email will unduly prejudice Defendants.

g.      The Defendants' Motion in Limine No. 2 to exclude evidence and arguments

regarding a "Duty of Candor" imposed by 35 C.F.R. 11.18 is **GRANTED**.  I have granted summary

judgment in favor of Defendants on Plaintiff's claim of fraudulent procurement.  Further, the duty

of candor, as Plaintiff describes it—a "very high-level . . . fiduciary-like duty of full disclosures"—

is simply inapplicable in the trademark registration context.  "The law of fraud in the trademark

registration context has taken a very different direction than the law of fraud in the patent

procurement context . . ..  One reason is that the patent application process has become a non-

16

adversarial relationship where the applicant owes the PTO a high level of disclosure." 6 McCarthy on Trademarks § 31:62. In fact, the cases Pandora Inc. cites support this proposition. *See, e.g.*, *Yocum v. Covington*, 216 U.S.P.Q. 210, 216 (TTAB 1972) ("The standard of disclosure as to prior knowledge of facts and of possible other and earlier uses is much lower in a trademark than a patent proceeding. . . . a[] [trademark] applicant who has at least 'color of title' to the mark is not guilty of fraud in making the foregoing application recitals."). Any evidence of duty of candor is irrelevant to this action.

h. The Defendants' Motion in Limine No. 3 to exclude any evidence or argument critical of a party's reliance on the attorney-client privilege is **DENIED**. Defendant states that Plaintiff will argue that Defendants are "hiding behind the attorney-client privilege and/or that the jury should draw an adverse inference from any reliance by Defendants on the privilege." Plaintiff states that it will not argue that the jury should draw an adverse inference from Defendants' reliance on the attorney-client privilege, but it reserves the right to challenge the specific invocations of the privilege. Given Plaintiff's clarification, Defendants' concerns are a non-issue. Plaintiff may raise challenges to Defendants' invocations of the attorney-client privilege, and I will rule on those challenges on a case-by-case basis.

i. The Defendants' Motion in Limine No. 4 to preclude parties from calling trial counsel as witnesses at trial is **GRANTED**. Plaintiffs state that they intend to call attorneys William R. Hansen and Thomas J. Fitzgerald to show deceptive intent in filing an application with the PTO. As I have dismissed Plaintiff's fraudulent procurement claim, there appears to be no further need for these witnesses.

j. The Defendants' Motion in Limine No. 5 to exclude any reference by Plaintiff or its counsel to any settlement communications is **GRANTED in part and DENIED in part**. Evidence of settlement discussions is not admissible to prove liability for, invalidity of, or amount

17

of a disputed claim, or to impeach through a prior inconsistent statement.  Fed. R. Evid. 408(a).

Settlement negotiations may be admissible to show bias or prejudice, or to negate a contention of

undue delay.  Fed. R. Evid. 408(b).  Plaintiff states that it intends to use evidence of settlement

negotiations to negate Defendants' laches defense.  Such use is permissible, relevant to the claims,

and is not unduly prejudicial.  Plaintiff also states that it must use evidence of settlement

negotiations to respond to possible arguments by Defendants that Plaintiff's settlement offer was

part of scheme to create a bidding war and extort money from Defendants.  Given the speculative

nature of Plaintiff's argument, I will not entertain it at this point.  Plaintiff may raise any *specific

and concrete* objections as they arise.

      k.      The Defendants' Motion in Limine No. 6 to exclude evidence and argument

regarding Pandora Jewelry's supposed failure to disclose this litigation and/or the status of its

trademarks to its licensees is **GRANTED in part and DENIED in part**.  Plaintiff claims that

Pandora LLC's failure to disclosure material information to its franchisees is evidence of unclean

hands, supports Plaintiff's unfair competition claims, and damaged Plaintiff.  At a minimum, this

evidence is relevant to Plaintiff's unfair competition claims to show how Pandora LLC allegedly

induced its franchisees to open concept stores.  However, the fact that Pandora LLC may have

violated franchising laws by failing to make certain disclosures is irrelevant, prejudicial, and likely

to confuse jurors.  Plaintiff may introduce evidence that Pandora LLC failed to make disclosures,

but may not introduce evidence that such disclosures violate franchising laws.

      l.      The Defendants' Motion in Limine No. 7 to exclude evidence or argument that

Plaintiff suffered lost sales, lost accounts, actual damages or a loss of foot traffic is **GRANTED in

part and DENIED in part**.  Defendants state, and Plaintiff does not contradict, that Plaintiff did

not disclose during discovery that it intended to quantify its damages in terms of lost sales, lost

accounts, or actual damages.  In fact, Plaintiff's expert prepared damages calculations in terms of

*Defendants'* profits.  Plaintiff cannot, at this late stage of litigation, decide to pursue a new theory of damages.  *See KW Plastics v. U.S. Can Co.*, 131 F. Supp. 2d 1289, 1295-96 (M.D. Ala. 2001) (excluding expert's unjust enrichment calculations because defendant failed to disclose them during discovery: "To allow [expert] to testify as to unjust enrichment*,* when he has never shown any prior inclination for doing so, would reward [defendant] for its misdeeds and countenance an end-run around the Federal Rules of Civil Procedure and the orders of the court.  Such litigation tactics, which are neither justified nor harmless, cannot stand.").  However, to the extent Plaintiff seeks to use this evidence to show confusion, it may do so.   Evidence of confusion is relevant to the central issues of this case.

m.      The Defendants' Motion in Limine No. 8 to exclude evidence and argument regarding the personal wealth and economic status of the parties' representatives is **GRANTED in part and DENIED in part**.  "The general rule is that, during trial, no reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with the other's." *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1178 (11th Cir. 2002).  However, evidence concerning a financial incentive in the outcome of trial may be permitted on cross-examination to show witness bias.  *See, e.g.*, *Crowe v. Bolduc*, 334 F.3d 124, 131-32 (1st Cir. 2003).  Plaintiff may use evidence of a witness's ownership interests on cross-examination for the limited purpose of showing bias.

n.      The Defendants' Motion in Limine No. 9 to exclude any reference by Plaintiff to any attorney colloquy in the HB Retail deposition is **GRANTED in part and DENIED in part**.  Defendant seeks to exclude attorney colloquy from HB Retail's Rule 30(b)(6) witness's deposition.  Plaintiff states that it will seek to introduce the colloquy if HB Retail raises an "advice of counsel" defense.  The relevant portion of the colloquy, where the witness asked counsel about Pandora LLC's trademark rights, is:

A.:  Can I ask a question?
Q.:  Sure
* * *
A.:  Is this factual that you own the rights?
Q.:  Yes.
Mr. Curtin:  No. It's not.  It's argument.
The Witness:  Okay.

Plaintiff states it would seek to introduce this exchange to refute an "advice of counsel" defense

because this exchange suggests that counsel did not advise HB Retail on this issue.  Plaintiff may

use this limited portion of the deposition transcript for this limited purpose.

o.      The Defendants' Motion in Limine No. 10 to exclude any reference by Plaintiff to

any discovery disputes, including attorneys' letters regarding the same is **DENIED**.  Plaintiff

clarifies that it does not intend to introduce three letters between counsel for the purpose of showing

that discovery disputes occurred or that Defendants failed to comply with their discovery

obligations.  Instead, Plaintiff seeks to introduce such evidence to show that certain documents do

not exist (or, at least, that Defendants have stated that such documents do not exist).  I will note that

Defendants do not argue that the fact that the underlying documents do not exist is irrelevant.

Plaintiffs may introduce the letters for this purpose, as doing so is relevant for the limited purpose

of showing the documents do not exist.  Any undue prejudice may be cured by a limiting

instruction.

p.      The Defendants' Motion in Limine No. 12 to exclude Plaintiff's purported

"confusion log" is **GRANTED in part and DENIED in part**.  I have already analyzed the hearsay

objections to the log in my Omnibus Order on Motions to Strike.  (ECF No. 208).  Because certain

of the entries include the thought process, conclusion, and analysis of the employee who made the

entry, the log cannot be admitted in toto.  *See Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of*

*Evans City*, 383 F.3d 110, 121-22 (3d Cir. 2004) (upholding district court ruling to exclude log

entries that reflected "the thought process, conclusion, analysis or interpretation" of the employee

who filled out the entry); *Vitek Sys., Inc. v. Abbott Labs.*, 675 F.2d 190, 194 (8th Cir. 1982)

(excluding handwritten memorandum of employee's meeting with customer as evidence of

confusion because such evidence would elicit employee's evaluation of customer's thought process,

and such testimony "does not fall within the present sense impression exception to the hearsay

rule.").  However, certain log entries may be admissible, for example, if the employee who made

the entries testifies at trial regarding the log entries he or she made.  *See, e.g.*, *Univ. of Ga. Athletic

Ass'n v. Laite*, 756 F.2d 1535, 1546 (11th Cir. 1985) (admitting as evidence of actual confusion an

affidavit from a professor who stated that he received inquiries in person or by telephone about an

infringing mark); *Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 9 F. Supp. 2d 1347, 1360

(S. D. Fla. 1998) (testimony by switchboard operator about misdirected calls due to confusion about

trademark owner was admissible under "then-existing state of mind" hearsay exception).

Additionally, Plaintiff is free to submit for the Court's consideration a redacted version of the log,

which excludes those entries that reflect the employee's thought process, conclusion, or analysis.

Defendants may raise objections to those entries in the log, which they believe should be excluded.

**DONE and ORDERED** in chambers, at Miami, Florida, this 7th day of June 2011.

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*